■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JOHN R. MANEY, Appellant.— Appeal by defendant from a judgment of the Supreme Court, Westchester County, rendered September 25, 1973, convicting him of petit larceny, upon a guilty plea, and imposing sentence. Judgment affirmed. The case is remitted to the Supreme Court, Westchester County, for proceedings to direct appellant to surrender himself to said court in order that execution of the judgment be commenced or resumed (CPL 460.50, subd. 5). The facts of this case are accurately stated in the dissenting memorandum. On these facts the sentencing of defendant to one year in jail, upon his plea of guilty to a misdemeanor in full satisfaction of 19 indictments against him, was not an abuse of discretion. Nor did it violate any promise made by the County Judge to sentence him to probation, since the uncontroverted evidence at the hearing established that the County Judge had made no commitment whatever. Here, defendant waived immunity and testified before the Grand Jury and before petit juries, having obtained the written promise of the then District Attorney (1) that upon completion of all testimony contemplated by the agreement he might plead guilty to a single misdemeanor to cover all criminal charges against him and (2) that the prosecutor's office would recommend to any Judge sentencing him on such misdemeanor that he be sentenced to probation rather than to imprisonment. Both these promises were kept. Whether, in addition to these written promises, the then District Attorney tricked defendant into believing that he would in fact be placed on probation depends upon whether we are to believe defense counsel's testimony that the prosecutor told him that the County Judge had promised that, if defendant kept his end of the bargain and if the prosecutor so recommended, he (the County Judge) would " accept it that way ". That the Justice at Criminal Term characterized defendant's counsel as a highly reputable attorney of Orange County does not mean he accepted defense counsel's version of his conversation with the prosecutor, who was frank enough to admit he had no recollection of their conversation one way or the other. As noted, the record affirmatively shows that the County Judge made no commitment whatever, and the Justice at Criminal Term so found. In these circumstances, the Justice's refusal to sentence defendant to probation clearly shows he rejected the defense version of the conversation. We do not deem this error. Indeed, to accept the defense version of the conversation is to find the former District Attorney guilty of reprehensibly and fraudulently misrepresenting that he spoke to and obtained a promise from the County Judge, a finding which the Justice at Criminal Term properly rejected and which in our

opinion is unwarranted on the basis of the record presented. Moreover, before accepting a misdemeanor plea from defendant in satisfaction of the 19 indictments against him, the court made abundantly clear to him that it was giving no indication of whether it would accept or reject the *recommendation* for probation which the People had promised in writing to make and which promise was thereafter kept. In our opinion, defendant has been sufficiently rewarded for his co-operation with the authorities by being allowed to plead guilty to one misdemeanor in full satisfaction of all 19 indictments against him. It was not error to sentence him to imprisonment rather than probation. Hopkins, Acting P. J., Martuscello, Latham and Benjamin, JJ., concur; Cohalan, J., dissents and votes to reverse the sentence and to remand the case to the Criminal Term for a resentence of probation, upon appropriate conditions, with the following memorandum: A few years back, the City of Newburgh in Orange County was experiencing a wave of civic corruption, especially in its Police Department. Defendant, Maney, then a police sergeant, who was in up to his neck in burglaries, larcenies, conspiracy, perjury, bribe receiving and tampering with physical evidence, decided to save his own skin and to throw his brother officers to the wolves. In pursuance of this end he made contact with the District Attorney (DA) and offered to turn State's evidence on condition that he be allowed to plead to a misdemeanor and escape incarceration; and, to protect himself to the full, he demanded that any agreement so made be put in writing. A "cooperation agreement" was drawn and signed by Maney, his attorney, the then DA, an assistant DA and a State Police captain. In return for Maney's complete co-operation, which included resignation from the police force and an admission of his own participation in 19 felonies, the DA promised to "recommend" the acceptance of a misdemeanor and the imposition of a sentence of one year's probation. Maney wanted even further assurance. He demanded that the DA speak to a County Judge to have the latter understand and give his approval to the arrangement. As he said, "I want a commitment of some kind." In due course the DA returned to Maney's attorney and told him in words or substance that the County Judge had promised that if Maney would keep his end of the bargain and if the DA would so recommend, "he will accept it that way". Maney thereupon waived immunity and testified at length before a Grand Jury and implicated the other wrongdoers. The scope of the inquiry widened to such an extent that it became too hot a potato for Orange County to handle. As a result, upon an application for a change of venue, the entire matter was transferred to Westchester County. There, a Justice of the Supreme Court presided over the trial of or pleas to the various indictments that were handed up as true bills. Whenever required, Maney testified at trial. The day came when Maney's case was to be processed. Sixteen months had now passed from the date of the "cooperation agreement". No inkling whatever had been given Maney that the bargain would not be honored. Indeed, he had been given reassurance on two or three occasions. Upon the request of Maney's attorney, the Supreme Court Justice ordered a hearing to take the testimony of various persons, including the former DA who had signed the agreement, the County Judge to whom he had allegedly spoken and Maney's attorney. At the hearing the former DA pleaded a poor memory and lack of any notes to refresh his recollection with respect to a conversation with the County Judge regarding the misdemeanor plea and the proposed sentence of probation. The Judge, when called, denied having any conversation whatever with the former DA with respect to Maney; and the latter's attorney repeated that the DA had given him the assurance of probation as a sentence — after his alleged conversation with the County Judge.

With reluctance, the Justice, at the conclusion of the hearing, accepted the misdemeanor plea, but balked at the proposed sentence of probation. Instead, he imposed a one-year jail sentence. It is from this sentence that Maney appeals. He insists that the bargain struck be kept. This is a classic example of the cheater cheated. If two thieves had fallen out and the People thereby gained, it would have been salutary. But when the DA, as an officer of the court, is involved, it is a different story. He cannot be heard to say that Maney got his just desserts by the jail sentence, since he tricked him into believing he would be placed on probation. The suggestion is now made that Maney should be permitted to withdraw his plea and proceed to trial on the indictments wherein he implicated himself. The mere suggestion suggests the obvious question. How can he be returned to the *status quo ante?* For he waived immunity and inculpated himself to a degree that would now render exculpation impossible. As an ancient philosopher put it: "Four things come not back: The *spoken word,* the sped arrow, time past, the neglected opportunity" (emphasis supplied). How can Maney recall the spoken word, the spate of testimony he gave against his fellow officers and himself? On the other hand, since an obvious fraud was perpetrated upon him, how could his waiver of immunity be employed against him in open court? And if the prosecution is proscribed from using his testimony, then, it might be asked, how about all those people against whom he testified both before the Grand Jury and at subsequent trials? Have their rights been in any way violated? Two recent cases have a somewhat tenuous similarity to the case at bar. They are *People* v. *Griffith* (43 A D 2d 20) and *Mosher* v. *LaVallee* (491 F. 2d 1346). They are both distinguishable. In *Griffith* there was no fraud by the prosecutor. Instead, the Assistant District Attorney (ADA) at the plea bargaining recommended to the court that it accept the defendant's guilty plea, and the court did so. The ADA also conferred with the court and defendant's counsel as to what sentence would be reasonable under the circumstances. The court advised the defendant, prior to accepting his guilty plea, that it was prepared to sentence him to three years, after receipt of the probation report. It developed that another ADA had previously rejected a three-year sentence and had offered four years. The court thereafter repudiated its promise and vacated the guilty plea. The First Department, unanimously holding that this was improper and that the defendant was entitled to specific performance of the plea bargain, stated (p. 25): "Discussions between prosecutors and defense counsel must be conducted fairly and in 'good faith'". The First Department quoted from *Santobello* v. *New York* (404 U. S. 257, 261), where the Supreme Court said that plea bargaining was a highly desirable part of the criminal process and stated: "However, all of these considerations presuppose fairness in securing agreement between an accused and a prosecutor." There was no fairness here. In *Mosher* (*supra*), the relator's retained counsel falsely told him that the Judge had made a promise to impose a minimum sentence. The Judge imposed the maximum sentence and the United States Court of Appeals for the Second Circuit held that the relator's guilty plea had to be vacated because it had been involuntarily obtained and because he had been denied the effective assistance of counsel. There was no fraud by the prosecutor. In *People* v. *Craig* (41 A D 2d 932) the defendant was convicted, upon his plea of guilty, of attempted burglary in the third degree. Upon appeal, this court said (pp. 932–933): "At the time defendant withdrew his plea of not guilty and entered a plea of guilty to the crime for which he was convicted, the court unconditionally promised that defendant would receive a one-year sentence, to run concurrently with the sentence he was then serving. However, on the date of sentencing the court reconsidered its promise, denied

defendant's application to withdraw his guilty plea and placed him on probation for five years. It is clear that under these circumstances defendant should have been sentenced as promised or accorded the opportunity to withdraw his guilty plea (*Santobello* v. *New York*, 404 U. S. 257). However, in view of the passage of time and, on the entire record herein, we are of the opinion that the interests of justice would best be served by remanding the case for resentence in accordance with the promise made (cf. *People* v. *Selikoff*, 41 A D 2d 376)." Although the facts in *Craig* (supra) are not analogous, because only the court's action was involved, we are faced at bar with the actions of the People collectively. The integrity of the machinery of justice is at issue. Here the DA promised to " recommend ", extracted all he needed for his own ends and walked away, leaving the onus of repudiation on the court. As a practical consideration, in the light of these developments, what sane person would ever turn State's evidence on the strength of a prosecutor's promise? " Rogue cop " though he be, Maney was entitled to what he had bargained for. I vote to reverse the sentence and to remand the case for resentence, in the interests of justice, in accordance with the " cooperation agreement " and its sequelae.