## SANTOBELLO v. NEW YORK

No. 70–98.   Argued November 15, 1971—Decided December 20, 1971

*Irving Anolik* argued the cause and filed a brief for petitioner.

*Daniel J. Sullivan* argued the cause for respondent. With him on the brief was *Burton B. Roberts.*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari in this case to determine whether the State's failure to keep a commitment concerning

the sentence recommendation on a guilty plea required a new trial.

The facts are not in dispute. The State of New York indicted petitioner in 1969 on two felony counts, Promoting Gambling in the First Degree, and Possession of Gambling Records in the First Degree, N. Y. Penal Law §§ 225.10, 225.20. Petitioner first entered a plea of not guilty to both counts. After negotiations, the Assistant District Attorney in charge of the case agreed to permit petitioner to plead guilty to a lesser-included offense, Possession of Gambling Records in the Second Degree, N. Y. Penal Law § 225.15, conviction of which would carry a maximum prison sentence of one year. The prosecutor agreed to make no recommendation as to the sentence.

On June 16, 1969, petitioner accordingly withdrew his plea of not guilty and entered a plea of guilty to the lesser charge. Petitioner represented to the sentencing judge that the plea was voluntary and that the facts of the case, as described by the Assistant District Attorney, were true. The court accepted the plea and set a date for sentencing. A series of delays followed, owing primarily to the absence of a pre-sentence report, so that by September 23, 1969, petitioner had still not been sentenced. By that date petitioner acquired new defense counsel.

Petitioner's new counsel moved immediately to withdraw the guilty plea. In an accompanying affidavit, petitioner alleged that he did not know at the time of his plea that crucial evidence against him had been obtained as a result of an illegal search. The accuracy of this affidavit is subject to challenge since petitioner had filed and withdrawn a motion to suppress, before pleading guilty. In addition to his motion to withdraw his guilty plea, petitioner renewed the motion to suppress and filed a motion to inspect the grand jury minutes.

These three motions in turn caused further delay until November 26, 1969, when the court denied all three and set January 9, 1970, as the date for sentencing. On January 9 petitioner appeared before a different judge, the judge who had presided over the case to this juncture having retired. Petitioner renewed his motions, and the court again rejected them. The court then turned to consideration of the sentence.

At this appearance, another prosecutor had replaced the prosecutor who had negotiated the plea. The new prosecutor recommended the maximum one-year sentence. In making this recommendation, he cited petitioner's criminal record and alleged links with organized crime. Defense counsel immediately objected on the ground that the State had promised petitioner before the plea was entered that there would be no sentence recommendation by the prosecution. He sought to adjourn the sentence hearing in order to have time to prepare proof of the first prosecutor's promise. The second prosecutor, apparently ignorant of his colleague's commitment, argued that there was nothing in the record to support petitioner's claim of a promise, but the State, in subsequent proceedings, has not contested that such a promise was made.

The sentencing judge ended discussion, with the following statement, quoting extensively from the presentence report:

> "Mr. Aronstein [Defense Counsel], I am not at all influenced by what the District Attorney says, so that there is no need to adjourn the sentence, and there is no need to have any testimony. It doesn't make a particle of difference what the District Attorney says he will do, or what he doesn't do.
>
> "I have here, Mr. Aronstein, a probation report. I have here a history of a long, long serious criminal record. I have here a picture of the life history of this man. . . .

" 'He is unamenable to supervision in the community. He is a professional criminal.' This is in quotes. 'And a recidivist. Institutionalization—'; that means, in plain language, just putting him away, 'is the only means of halting his anti-social activities,' and protecting you, your family, me, my family, protecting society. 'Institutionalization.' Plain language, put him behind bars.

"Under the plea, I can only send him to the New York City Correctional Institution for men for one year, which I am hereby doing."

The judge then imposed the maximum sentence of one year.

Petitioner sought and obtained a certificate of reasonable doubt and was admitted to bail pending an appeal. The Supreme Court of the State of New York, Appellate Division, First Department, unanimously affirmed petitioner's conviction, 35 App. Div. 2d 1084, 316 N. Y. S. 2d 194 (1970), and petitioner was denied leave to appeal to the New York Court of Appeals. Petitioner then sought certiorari in this Court. Mr. Justice Harlan granted bail pending our disposition of the case.

This record represents another example of an unfortunate lapse in orderly prosecutorial procedures, in part, no doubt, because of the enormous increase in the workload of the often understaffed prosecutor's offices. The heavy workload may well explain these episodes, but it does not excuse them. The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining," is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.

Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned. See *Brady* v. *United States,* 397 U. S. 742, 751–752 (1970).

However, all of these considerations presuppose fairness in securing agreement between an accused and a prosecutor. It is now clear, for example, that the accused pleading guilty must be counseled, absent a waiver. *Moore* v. *Michigan,* 355 U. S. 155 (1957). Fed. Rule Crim. Proc. 11, governing pleas in federal courts, now makes clear that the sentencing judge must develop, *on the record,* the factual basis for the plea, as, for example, by having the accused describe the conduct that gave rise to the charge.[1] The plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must

---

[1] Fed. Rule Crim. Proc. 11 provides:

"A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

in some way be made known. There is, of course, no absolute right to have a guilty plea accepted. *Lynch* v. *Overholser*, 369 U. S. 705, 719 (1962); Fed. Rule Crim. Proc. 11. A court may reject a plea in exercise of sound judicial discretion.

This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

On this record, petitioner "bargained" and negotiated for a particular plea in order to secure dismissal of more serious charges, but also on condition that no sentence recommendation would be made by the prosecutor. It is now conceded that the promise to abstain from a recommendation was made, and at this stage the prosecution is not in a good position to argue that its inadvertent breach of agreement is immaterial. The staff lawyers in a prosecutor's office have the burden of "letting the left hand know what the right hand is doing" or has done. That the breach of agreement was inadvertent does not lessen its impact.

We need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for the plea. He stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case

to the state courts for further consideration. The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, *i. e.,* the opportunity to withdraw his plea of guilty.[2] We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge.

The judgment is vacated and the case is remanded for reconsideration not inconsistent with this opinion.

MR. JUSTICE DOUGLAS, concurring.

I join the opinion of the Court and add only a word. I agree both with THE CHIEF JUSTICE and with MR. JUSTICE MARSHALL that New York did not keep its "plea bargain" with petitioner and that it is no excuse for the default merely because a member of the prosecutor's staff who was not a party to the "plea bargain" was in charge of the case when it came before the New York court. The staff of the prosecution is a unit and each member must be presumed to know the commitments made by any other member. If responsibility could be evaded that way, the prosecution would have designed another deceptive "contrivance," akin to those we condemned in *Mooney* v. *Holohan,* 294 U. S. 103, 112, and *Napue* v. *Illinois,* 360 U. S. 264.

---

[2] If the state court decides to allow withdrawal of the plea, the petitioner will, of course, plead anew to the original charge on two felony counts.

These "plea bargains" are important in the administration of justice both at the state [1] and at the federal [2] levels and, as THE CHIEF JUSTICE says, they serve an important role in the disposition of today's heavy calendars.

However important plea bargaining may be in the administration of criminal justice, our opinions have established that a guilty plea is a serious and sobering occasion inasmuch as it constitutes a waiver of the fundamental rights to a jury trial, *Duncan* v. *Louisiana,* 391 U. S. 145, to confront one's accusers, *Pointer* v. *Texas,* 380 U. S. 400, to present witnesses in one's defense, *Washington* v. *Texas,* 388 U. S. 14, to remain silent, *Malloy* v. *Hogan,* 378 U. S. 1, and to be convicted by proof beyond all reasonable doubt, *In re Winship,* 397 U. S. 358. Since *Kercheval* v. *United States,* 274 U. S. 220, this Court has recognized that "unfairly obtained" guilty pleas in the federal courts ought to be vacated. In the course of holding that withdrawn guilty pleas were not admissible in subsequent federal prosecutions, the Court opined:

> "[O]n timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence. Such an application does not involve any question of guilt or innocence." *Id.,* at 224.

---

[1] In 1964, guilty pleas accounted for 95.5% of all criminal convictions in trial courts of general jurisdiction in New York. In 1965, the figure for California was 74.0%. President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts 9 (1967).

[2] In 1964, guilty pleas accounted for 90.2% of all criminal convictions in United States district courts. *Ibid.* In fiscal 1970, of 28,178 convictions in the 89 United States district courts, 24,111 were by pleas of guilty or *nolo contendere.* Report of Director of Administrative Office of U. S. Courts, for Period July 1 through Dec. 31, 1970, Table D–4, p. A–26.

Although *Kercheval*'s dictum concerning grounds for withdrawal of guilty pleas did not expressly rest on constitutional grounds (cf. *Frame* v. *Hudspeth,* 309 U. S. 632), *Walker* v. *Johnston,* 312 U. S. 275, clearly held that a federal prisoner who had pleaded guilty despite his ignorance of and his being uninformed of his right to a lawyer was deprived of that Sixth Amendment right, or if he had been tricked by the prosecutor through misrepresentations into pleading guilty then his due process rights were offended. In *Walker,* the petitioner was granted an evidentiary hearing to prove his factual claims in anticipation of vacating the plea. Accord: *Waley* v. *Johnston,* 316 U. S. 101; *Von Moltke* v. *Gillies,* 332 U. S. 708. In *Machibroda* v. *United States,* 368 U. S. 487, the defendant alleged that when he threatened to tell his lawyer of private promises made by an Assistant United States Attorney in exchange for a proposed guilty plea, the prosecutor threatened additional prosecutions. Although the Government denied them, the Court held that if the allegations were true, then the defendant would be entitled to have his sentence vacated and the matter was remanded for an evidentiary hearing.

State convictions founded upon coerced or unfairly induced guilty pleas have also received increased scrutiny as more fundamental rights have been applied to the States. After *Powell* v. *Alabama,* 287 U. S. 45, the Court held that a state defendant was entitled to a lawyer's assistance in choosing whether to plead guilty. *Williams* v. *Kaiser,* 323 U. S. 471. In *Herman* v. *Claudy,* 350 U. S. 116, federal habeas corpus was held to lie where a lawyerless and uneducated state prisoner had pleaded guilty to numerous and complex robbery charges. And, a guilty plea obtained without the advice of counsel may not be admitted at a subsequent state prosecution. *White* v. *Maryland,* 373 U. S. 59. Thus, while plea bargaining is not *per se* unconstitutional, *North Carolina* v. *Alford,* 400 U. S. 25, 37–38, *Shelton* v. *United States,* 242 F. 2d 101,

aff'd *en banc,* 246 F. 2d 571 (CA5 1957), a guilty plea is rendered voidable by threatening physical harm, *Waley* v. *Johnston, supra,* threatening to use false testimony, *ibid.,* threatening to bring additional prosecutions, *Machibroda* v. *United States, supra,* or by failing to inform a defendant of his right of counsel, *Walker* v. *Johnston, supra.* Under these circumstances it is clear that a guilty plea must be vacated.

But it is also clear that a prosecutor's promise may deprive a guilty plea of the "character of a voluntary act." *Machibroda* v. *United States, supra,* at 493. Cf. *Bram* v. *United States,* 168 U. S. 532, 542–543. The decisions of this Court have not spelled out what sorts of promises by prosecutors tend to be coercive, but in order to assist appellate review in weighing promises in light of all the circumstances, all trial courts are now required to interrogate the defendants who enter guilty pleas so that the waiver of these fundamental rights will affirmatively appear in the record. *McCarthy* v. *United States,* 394 U. S. 459; *Boykin* v. *Alabama,* 395 U. S. 238. The lower courts, however, have uniformly held that a prisoner is entitled to some form of relief when he shows that the prosecutor reneged on his sentencing agreement made in connection with a plea bargain, most jurisdictions preferring vacation of the plea on the ground of "involuntariness," while a few permit only specific enforcement. Note: Guilty Plea Bargaining: Compromises By Prosecutors To Secure Guilty Pleas, 112 U. Pa. L. Rev. 865, 876 (1964). As one author has stated, the basis for outright vacation is "an outraged sense of fairness" when a prosecutor breaches his promise in connection with sentencing. D. Newman, Conviction: The Determination of Guilt or Innocence Without Trial 36 (1966).

This is a state case over which we have no "supervisory" jurisdiction; and Rule 11 of the Federal Rules

of Criminal Procedure obviously has no relevancy to the problem.

I join the opinion of the Court and favor a constitutional rule for this as well as for other pending or on-coming cases. Where the "plea bargain" is not kept by the prosecutor, the sentence must be vacated and the state court will decide in light of the circumstances of each case whether due process requires (a) that there be specific performance of the plea bargain or (b) that the defendant be given the option to go to trial on the original charges. One alternative may do justice in one case, and the other in a different case. In choosing a remedy, however, a court ought to accord a defendant's preference considerable, if not controlling, weight inasmuch as the fundamental rights flouted by a prosecutor's breach of a plea bargain are those of the defendant, not of the State.

MR. JUSTICE MARSHALL, with whom MR. JUSTICE BRENNAN and MR. JUSTICE STEWART join, concurring in part and dissenting in part.

I agree with much of the majority's opinion, but conclude that petitioner must be permitted to withdraw his guilty plea. This is the relief petitioner requested, and, on the facts set out by the majority, it is a form of relief to which he is entitled.

There is no need to belabor the fact that the Constitution guarantees to all criminal defendants the right to a trial by judge or jury, or, put another way, the "right not to plead guilty," *United States* v. *Jackson,* 390 U. S. 570, 581 (1968). This and other federal rights may be waived through a guilty plea, but such waivers are not lightly presumed and, in fact, are viewed with the "utmost solicitude." *Boykin* v. *Alabama,* 395 U. S. 238, 243 (1969). Given this, I believe that where the defendant presents a reason for vacating his plea and the government has not relied on the plea to its disadvantage,

the plea may be vacated and the right to trial regained, at least where the motion to vacate is made prior to sentence and judgment. In other words, in such circumstances I would not deem the earlier plea to have irrevocably waived the defendant's federal constitutional right to a trial.

Here, petitioner never claimed any automatic right to withdraw a guilty plea before sentencing. Rather, he tendered a specific reason why, in his case, the plea should be vacated. His reason was that the prosecutor had broken a promise made in return for the agreement to plead guilty. When a prosecutor breaks the bargain, he undercuts the basis for the waiver of constitutional rights implicit in the plea. This, it seems to me, provides the defendant ample justification for rescinding the plea. Where a promise is "unfulfilled," *Brady* v. *United States,* 397 U. S. 742, 755 (1970), specifically denies that the plea "must stand." Of course, where the prosecutor has broken the plea agreement, it may be appropriate to permit the defendant to enforce the plea bargain. But that is not the remedy sought here.* Rather, it seems to me that a breach of the plea bargain provides ample reason to permit the plea to be vacated.

It is worth noting that in the ordinary case where a motion to vacate is made prior to sentencing, the government has taken no action in reliance on the previously entered guilty plea and would suffer no harm from the plea's withdrawal. More pointedly, here the State claims no such harm beyond disappointed expec-

---

*MR. JUSTICE DOUGLAS, although joining the Court's opinion (apparently because he thinks the remedy should be chosen by the state court), concludes that the state court "ought to accord a defendant's preference considerable, if not controlling, weight." Thus, a majority of the Court appears to believe that in cases like these, when the defendant seeks to vacate the plea, that relief should generally be granted.

tations about the plea itself. At least where the government itself has broken the plea bargain, this disappointment cannot bar petitioner from withdrawing his guilty plea and reclaiming his right to a trial.

I would remand the case with instructions that the plea be vacated and petitioner given an opportunity to replead to the original charges in the indictment.