505 P.2d 236

The STATE of Arizona, Appellee,

v.

Glen Harlan RICHARD, Appellant.

No. 2263.

Supreme Court of Arizona,
In Division.

Jan. 25, 1973.

Rehearing Denied Feb. 27, 1973.

Gary K. Nelson, Atty. Gen., by Peter M. Van Orman, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from a judgment of guilt after a guilty plea to the crime of child molesting, § 13-653 A.R.S., and a sentence thereon of from 15 to 20 years.

We are asked to answer the following questions on appeal:

1. Did the State fail to keep its part of a plea bargain agreement?

2. Is the defendant precluded from raising on appeal alleged defects in a plea of guilty when he had an opportunity to do so before the trial court and failed to do so?

The facts necessary for a determination of this matter on appeal are as follows. After a preliminary hearing, the defendant was held to answer to the charge of child molesting. On 24 September 1969, the defendant appeared in court to change a previous plea of not guilty to guilty to the information as filed. The following transpired:

"MR. WOLFRAM: * * * At this time the defense would move to be allowed to withdraw their previously entered plea of not guilty and change the plea to guilty.

"THE COURT: And, that is to the information as filed, is that correct?

"MR. WOLFRAM: Yes, your Honor.

THE COURT: Mr. Wolfram, will you and your client please approach the bench?

(Discussion held off the record.)

"THE COURT: On the record.

EXAMINATION OF MR. RICHARD

"Q. Your true name, sir, is Glen Harlan Richard, is that correct?

"A. Yes, ma'am.

"Q. And, you are the defendant named in number 57761 in the information for child molesting?

"A. Yes, ma'am.

"Q. This information states that on or about August 1st, 1968, in Maricopa County, Arizona, that you did feloniously molest one Michael Robert Sprinzl, a child of approximately 11 years of age, is that correct?

"A. (no audible response)

"MR. WOLFRAM: Speak up.

"A. Yes, ma'am.

"Q. And, how old are you now, sir?

"A. 49.

"Q. Are you presently employed?

"A. Yes, ma'am.

"Q. You are. In what capacity?

"A. Barron Container.

"Q. Do you realize that you have the right and—I realize this is repeticious but it's not on the record, that you have the right to have a jury trial on this charge?

"A. Yes, ma'am.

"Q. And, do you further realize that by changing your plea from not guilty to guilty that you are waiving your right to a trial by jury as charged?

"A. Yes, ma'am.

"Q. Do you further realize that, sir, that under the laws of the State of Arizona it is provided that this Court may sentence you to the Arizona State Penitentiary for a period of five years to life?

"A. Yes, ma'am.

"Q. You are aware of this provision?

"A. Yes.

"Q. Was there any inducement or any promise of either probation or leniency in sentencing by the Court made to you by any person to induce you to change your plea from not guilty to guilty?

"A. No, ma'am.

"Q. There was no representation as to what sentence the Court would impose upon you that induced you to change that plea, is that correct?

"A. That's right.

"Q. And there was no promise from anyone of future action in this respect?

"A. No.

"Q. Prior to changing—prior to your determination to change your plea

to guilty, did you discuss this matter at length with your attorney?

"A. Yes, ma'am.

"Q. You did. Is it your intention at this time to enter a plea of guilty to the information charging you with child molesting?

"A. Yes, ma'am.

"Q. What is your desire?

"A. Yes.

"THE COURT: I will ask your counsel now that—from your investigation preparatory to going to trial, both of the conditions that surround this charge, as well as of the testimony expected from witnesses in the matter, whether you feel that your client's change of plea is consistent with facts that you have found?

"MR. WOLFRAM: Yes, your Honor.

"THE COURT: You feel it is consistent?

"MR. WOLFRAM: Yes.

"Q. BY THE COURT: Are there any questions, sir, that you would like to ask me?

"A. BY MR. RICHARD: Actually I don't know, ma'am.

"Q. I would be happy, if there is anything that isn't clear in your mind at this time, before I accept your change of plea to discuss them with you. And, that has to do with the charge as opposed to the punishment."

The court, on 23 October 1969, sentenced the defendant to not less than 15 nor more than 20 years and notified the defendant of his various appeal rights.

The day after the sentence, defendant filed a motion for leave to withdraw the plea of guilty or in the alternative a motion for new trial. The court did not become aware of the motion until 5 February 1970 and on 6 February, by minute entry, ordered nunc pro tunc denying the motions.

Over eight months later, the defendant, on 23 October 1970, filed a motion for reconsideration of his motion to withdraw his plea, supported by an affidavit. The trial court vacated the minute entry order of 6 February 1970 and set the matter for hearing on 2 November 1970 and on that date, after a hearing, counsel continued to 16 November 1970 for an evidentiary hearing. At that hearing, testimony concerning the plea bargain was received. The former Deputy County Attorney testified:

"* * * And, I believe—if I'm—if I remember correctly, he was present at one time, when I indicated to him also that I would recommend probation. But, I'm not sure.

"And subsequent thereto, I did recommend probation to the probation officer. * * *"

Mr. Wolfram, the attorney for the defendant at the time of the sentencing, testified as follows:

"Q. Now, was it your understanding, and also Mr. Chester's, did he agree with you at that time—or prior to the plea being entered, that he would not—or the State of Arizona would not oppose a motion for a new trial or a motion to withdraw the plea of guilty, is that correct?

"A. Yes.

"Q. Did his understanding go as far as to joining the defendant in his motion should be receive a sentence requiring prison time?

"A. I don't understand the question.

"Q. The difference between non-opposition and joining the defendant. In other words, did Mr. Chester represent to you that he would, on behalf of the defendant himself, join in in a subsequent motion for withdrawal of plea?

"A. No.

"Q. Just no opposition, is that correct?

"A. Right."

The defendant testified on cross-examination as follows:

"Q. Just a couple of questions, Mr. Richard. Going back to when you entered your plea of guilty, your attorney explained to you what he was doing in your behalf regarding your plea?

"A. That's right.

"Q. He told you that the County Attorney, who was prosecuting, would make a recommendation of probation?

"A. This is correct.

"Q. And, I'm sure that Mr. Wolfram told you the fact that he could not promise that you would get probation?

"A. This is true.

"Q. Based on his experience he thought you probably would and your hopes were high that you would get probation?

"A. That's true. In view of the fact that he said that this was almost—almost always happens, it seems like no chance they wouldn't, you know. I just didn't really feel, in my own mind—

"Q. But, he did explain to you that this was not a promise?

"A. That's true."

The court also asked the defendant:

"Q. Did you know that at that time there was another charge pending against you which was to be dismissed when you were sentenced?

"A. Yes, Ma'am.

"Q. And, did you—at that time, was that an inducement to plead guilty?

"A. Well, this would mean a quicker decision. On this one charge alone, I had been through four arrests and charges dropped and I was—I was almost willing to do anything to get this over with.

"Q. So, you are telling me now that there were promises which induced you to enter your plea of guilty?

"A. I feel that there were.

"Q. And, what were those promises?

"A. Well, they couldn't—I wouldn't say that they were actual—the people were clear, I think, in saying that they didn't have the power to do it, but if somebody telling me that this is the way things always operate, without exception up to this point, then I had the feeling that I was quite secure in pleading this way."

At the conclusion of the hearing to set aside the guilty plea, the Deputy County Attorney stated:

"Pursuant to Mr. Chester's agreement with counsel for the defense, the State has no argument in opposition to his motion.

"The State, however, at this time wishes to make clear and reiterate, for the record, that the State does not join in the defense's motion, but merely is—pursuant to the stipulation entered into by Mr. Chester—does not oppose the motion before this Court."

## EFFECT OF THE PLEA BARGAIN

■ The United States Supreme Court has made it clear that the State is bound by a plea bargain which induces a guilty plea:

"This phase of the process of criminal justice and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

"On this record, petitioner 'bargained' and negotiated for a particular plea in order to secure dismissal of more serious

charges, but also on condition that no sentence recommendation would be made by the prosecutor. It is now conceded that the promise to abstain from a recommendation was made, and at this stage the prosecution is not in a good position to argue that its inadvertent breach of agreement is immaterial. The staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done. That the breach of agreement was inadvertent does not lessen its impact." Santobello v. New York, 404 U. S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427, 433 (1971).

■■ However, the defendant still has the burden of showing that, contrary to his statements in open court at the time of sentencing, there was in fact a plea bargain which the County Attorney's office breached. In the instant case, while there is evidence of a plea bargain, there is no indication that the attorney for the State, though a different one from the one who entered into the plea bargain, failed to abide by that agreement. The Deputy County Attorney recommended to the probation officer that the defendant be given probation. The new deputy did not oppose the motion to set aside the plea of guilty and we do not believe that the facts in this case bring the defendant within the United States Supreme Court case of Santobello v. New York, supra.

## OTHER DEFECTS IN THE PLEA

■ At the hearing on the motion to withdraw his plea, or in the alternative for a new trial, held more than a year after the plea, the defendant raised only the question of his plea bargain with the County Attorney and the alleged failure of the County Attorney to live up to that bargain. The court at that hearing was not asked to consider, nor was evidence introduced to show any reason why the trial court should set aside the plea based upon the three additional issues raised in this court on appeal, namely, whether at the time of the plea the record affirmatively showed that the defendant knew of (1) his right to confront witnesses, (2) the fact that he would be ineligible for parole until the completion of a minimum term of five years, and (3) whether there was a factual basis for the guilty plea. Under the circumstances, we cannot say the trial court was wrong in failing to consider matters not raised at the hearing. Having failed to do so, we can only assume that the defendant did know the consequences of his plea and that there was a factual basis for the acceptance of that plea. We have, nevertheless, considered the question in light of our statutory obligation to search the record for fundamental error. § 13–1715 A.R.S.

■ As to the questions of the alleged failure to inform the defendant at the time of his plea of the right to confront witnesses and the privilege against self-incrimination, we find no error. State v. Campbell, 107 Ariz. 348, 488 P.2d 968 (1971); State v. McCallister, 107 Ariz. 143, 483 P.2d 558 (1971). As to the factual basis for the plea, the reporter's transcript of the preliminary hearing is ample to supply the factual basis of the plea. State v. Williker, 107 Ariz. 611, 491 P.2d 465 (1971); State v. Hooper, 107 Ariz. 327, 487 P.2d 394 (1971). As to the alleged failure to advise of the mandatory minimum sentence, see State v. Ross, 108 Ariz. 245, 495 P.2d 841 (1972).

Judgment affirmed.

HAYS, C. J., and HENRY S. STEVENS, Judge of Court of Appeals, Division One, Department A, concur.