574 So.2d 225 (1991)
Stephen RUTH, Appellant,
v.
STATE of Florida, Appellee.
No. 89-02723.
District Court of Appeal of Florida, Second District.
January 25, 1991.
*226 B. Robert Ohle, St. Petersburg, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Brenda S. Taylor, Asst. Atty. Gen., Tampa, for appellee.
ALTENBERND, Judge.
Stephen Ruth appeals his conviction and sentence for trafficking in cannabis. § 893.135(1)(a), Fla. Stat. (1987). The trial court sentenced him to sixty years' imprisonment as a habitual offender. We reverse the conviction and sentence and remand for a new hearing to determine whether Mr. Ruth is entitled either to specifically enforce his plea agreement or to withdraw his plea. In the event that the trial court considers the habitual offender issue on remand, the state must prove the prior convictions essential for that enhancement *227 and otherwise comply with the appropriate statute.

I. THE NEGOTIATED PLEA AGREEMENT
On January 3, 1988, Mr. Ruth was arrested in Polk County for possessing an aircraft with improper identification numbers. § 329.11, Fla. Stat. (1987). He was tried and convicted of this charge on May 25, 1988. As a result of this conviction he faced the probability of a guidelines sentence in the range of nine to twelve years.
During Mr. Ruth's trial, a key law enforcement officer approached defense counsel and suggested that a reduced sentence might be arranged if Mr. Ruth provided substantial assistance concerning some prior drug deals. After trial, but prior to sentencing, the officer contacted Mr. Ruth's trial counsel again to see if Mr. Ruth was interested in cooperating. In the course of several meetings, Mr. Ruth agreed to provide information concerning the involvement of several other people in drug trafficking operations in exchange for the state attorney's recommendation of a reduced sentence.
A written agreement between the parties was not prepared at that time. From the testimony of Mr. Ruth and his attorney, as well as the transcripts of various hearings, it is apparent that Mr. Ruth reasonably believed the state would recommend a sentence of four years' imprisonment followed by ten years' probation for his conviction in the aircraft identification case as well as for any trafficking charges arising out of the new information that he was providing.
After Mr. Ruth provided information against the other individuals involved in this drug trafficking operation, the state filed the drug trafficking charges on which this appeal is based. This was done as part of the agreement so that the state would have an "open" case against Mr. Ruth. It is significant to note that from the record it does not appear that the state would have had any factual basis to charge Mr. Ruth, or any other person, with these trafficking charges but for the information contained in or derived from Mr. Ruth's cooperative statements.
On September 21, 1988, the trial court conducted a sentencing hearing in the aircraft identification case. At the beginning of that hearing, the parties still did not have a signed plea agreement. Mr. Ruth was concerned that the state would not live up to the plea agreement as he understood it. Following lengthy negotiations before the court and during recess, the parties finally reached a plea agreement under which Mr. Ruth would receive the agreed split sentence of four years' imprisonment followed by ten years' probation in the aircraft identification case. He also agreed to forfeit his aircraft, forego an appeal, and continue to provide substantial assistance. Mr. Ruth received this sentence in the aircraft identification case and did not appeal.
As part of the plea agreement, the state also agreed to move for a reduced sentence in this trafficking case. Although the agreement warned Mr. Ruth that he could receive up to sixty years' imprisonment as a habitual offender if he did not satisfy the plea agreement, it appears that the state attorney had orally indicated he would request a reduced sentence identical to the split sentence received in the aircraft identification case. The plea agreement provided that the state attorney would have the "sole province" to determine whether Mr. Ruth provided substantial assistance.
From the transcript of the September 21, 1988, sentencing hearing in the aircraft identification case, it appears that Mr. Ruth and his attorney believed that he had already provided the needed information for substantial assistance by the time of that hearing. They understood that the only additional assistance needed by the state was Mr. Ruth's possible testimony at trials involving the other people. If the state expected more from Mr. Ruth, this record does not establish what additional assistance it required.
At some later time, the state attorney apparently decided that Mr. Ruth had not provided substantial assistance. As a result, the state planned to proceed with a sentencing hearing in the trafficking case at which it made no motion to reduce the *228 sentence and at which it requested a maximum sixty-year sentence. The state's reason for so deciding is unclear, except that it had nothing to do with any failure or refusal to testify. From the record, it appears that Mr. Ruth had a disagreement or misunderstanding with a law enforcement officer, but it is unclear whether this was before or after the state attorney agreed to the negotiated plea. Although it is entirely possible that the state attorney learned something after the plea hearing which would have given him the right in good faith to refuse to make a motion for the agreed reduced sentence, this record contains no explanation of such a new development.
When it became apparent that the state was not going to honor the plea agreement, Mr. Ruth, through new counsel, filed a motion to withdraw his guilty plea in the trafficking case.[1] In lieu of withdrawing his plea, it is clear that Mr. Ruth was willing to accept the agreed split sentence as specific enforcement of the intended plea agreement. At the hearing on this motion, Mr. Ruth's prior attorney provided sufficient evidence of his client's substantial assistance to raise a legitimate question concerning the state's motivation in refusing to move for a reduced sentence. The trial court denied the motion to withdraw the plea and ultimately sentenced the defendant to sixty years' imprisonment.[2] Thus, Mr. Ruth's efforts to cooperate with law enforcement to reduce a possible twelve-year sentence resulted in a forty-eight-year increase in his actual sentence.
We recognize that state attorneys have broad discretion in performing their duties. State v. Werner, 402 So.2d 386 (Fla. 1981). On the other hand, they are also held to a high standard of both promise and performance in the area of plea agreements. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); Tillman v. State, 522 So.2d 14 (Fla. 1988); Vetter v. State, 425 So.2d 575 (Fla. 2d DCA 1983); Macker v. State, 500 So.2d 256 (Fla. 3d DCA 1987); Acosta v. Turner, 666 F.2d 949 (5th Cir.1982). This high standard governs a state attorney's promise in a plea agreement to move for a reduced sentence if a defendant convicted of trafficking provides "substantial assistance." § 893.135(4), Fla. Stat. (1987).
We also recognize that the state attorney does have the "sole province" under the plea agreement to determine whether Mr. Ruth substantially complied with his end of the bargain. The statute supports the plea agreement because it contemplates that the issue of a reduced sentence will be first raised by the state attorney by motion. § 893.135(4), Fla. Stat. (1987). Mr. Ruth is not entitled to substitute the trial judge or some other person for the state attorney in the performance of this prosecutorial function. Nevertheless, when the state requests the trial court to sentence a defendant outside the agreed sentence of the plea agreement, the defendant is entitled to receive an explanation of the grounds upon which the state attorney is exercising his or her "sole province."
We hold that if a defendant presents prima facie evidence that he or she provided the substantial assistance contemplated by a plea agreement, the state attorney must provide an adequate explanation *229 of his or her good faith reasons for declining to move for a reduced sentence. The defendant is entitled to some remedy if he establishes that the state attorney has not exercised good faith in deciding that the defendant failed to provide substantial assistance.[3] We emphasize that it is not the trial court's function to substitute its judgment for that of the state attorney on the issue of substantial assistance. Prior to the judicial function of sentencing, however, the trial court should assure that the state attorney has exercised that degree of honesty of intention and purpose under the plea agreement so that the court is authorized to sentence the defendant to a greater sentence than that which the defendant anticipated when he entered into the plea agreement and announced his plea.

II. THE HABITUAL OFFENDER STATUS
In order to sentence Mr. Ruth as a habitual offender on the drug trafficking charge, the state was obligated to establish the essential prior convictions, and otherwise comply with the applicable statute. § 775.084(1), Florida Statutes (1987).[4]
At the sentencing hearing on September 8, 1989, the state presented a motor vehicle record containing misdemeanors but no felonies. It also presented documentation from Charlotte County which suggested that Mr. Ruth had been charged with a felony in that jurisdiction. Mr. Ruth's counsel indicated that he was personally familiar with that case and that Mr. Ruth had been convicted of a misdemeanor rather than a felony. The trial court did not obtain a certified copy of any judgment from Charlotte County. It also relied on evidence concerning a 1980 South Carolina conviction which may have been a misdemeanor and may also fall outside the five-year window. Since Mr. Ruth objected to the truth of the state's documentary evidence, it was incumbent upon the state to obtain certified copies of the judgments or otherwise verify the prior felony convictions. English v. State, 529 So.2d 1272 (Fla. 2d DCA 1988); Wright v. State, 476 So.2d 325 (Fla. 2d DCA 1985); Vance v. State, 545 So.2d 398 (Fla. 1st DCA), review denied, 551 So.2d 463 (Fla. 1989).
Reversed and remanded.
DANAHY, A.C.J., and FRANK, J., concur.
NOTES
[1] This motion also alleged that Mr. Ruth had been incompetent to enter the plea by virtue of his emotional state and the medication he had been receiving, and included a claim of ineffective assistance on the part of Mr. Ruth's prior attorney. The trial court received expert testimony concerning Mr. Ruth's competency and concluded that he had been mentally competent when he signed the plea agreement. Mr. Ruth's participation at the hearing on September 21, 1988, supports this conclusion as does some of the expert testimony. Accordingly, we affirm that determination. Likewise, the trial court considered the testimony of Mr. Ruth's original trial counsel before ruling that counsel had not been ineffective. While it is clear that trial counsel believes the state has not been honorable in this case, his testimony does not establish that he was incompetent in obtaining this enforceable plea agreement from the state on behalf of Mr. Ruth. Accordingly, we also affirm this determination by the trial court.
[2] It should be noted that this is not a case in which the trial court is refusing to honor a plea agreement negotiated by the court. See Davis v. State, 308 So.2d 27 (Fla. 1975); Moore v. State, 489 So.2d 1215 (Fla. 2d DCA 1986). The court is honoring and enforcing a negotiated plea agreement which contains a clause under which the prosecutor is the decisionmaker concerning the issue of the defendant's substantial assistance.
[3] The withdrawal of a plea is the most common remedy when the state breaches a plea agreement. See State v. Suarez, 510 So.2d 643 (Fla. 2d DCA 1987); Offord v. State, 544 So.2d 308 (Fla. 4th DCA 1989). There are circumstances, however, in which specific performance may be the appropriate remedy. See Tillman v. State, 522 So.2d 14 (Fla. 1988). See also Odom v. State, 310 So.2d 770 (Fla. 2d DCA 1975) (specific performance requires a clear showing of irrevocable prejudice). As a practical matter, because of the unusual facts involved in this case, the withdrawal of Mr. Ruth's negotiated plea might not provide him with much benefit. It appears that the state now has other witnesses and evidence which could be used to convict him of this trafficking charge. His statements are effectively a confession to this crime. Thus, on remand the trial court should permit Mr. Ruth to specifically enforce the plea agreement if that remedy is appropriate.
[4] The trafficking sentencing hearing took place on September 8, 1989, for an offense occurring on January 3, 1988. The parties have relied on the habitual offender statute effective October 1, 1988. § 775.084, Fla. Stat. (Supp. 1988) (corresponds to Ch. 88-131, § 6, Laws of Fla.). In this case, however, the operative statute is section 775.084, Florida Statutes (1987). If habitual offender status is sought on remand, the trial court should apply the 1987 habitual offender statute.