This appeal is taken from a final judgment of the Lake County Common Pleas Court. Appellant, Deborah S. Olivarez, appeals from the denial of her petition for postconviction relief. For the following reasons, we affirm the judgment of the trial court.
Appellant was a member of the religious sect headed by Jeffrey Lundgren that carried out the brutal, execution-style slayings of Dennis and Cheryl Avery and their three daughters. The murders took place on April 17, 1989 in Kirtland, Ohio.
On January 5, 1990, the Lake County Grand Jury returned a fifteen-count indictment against appellant, including: five counts of complicity to commit aggravated murder in violation of R.C. 2923.03; five counts of conspiracy to commit aggravated murder in violation of R.C. 2923.01; and five counts of kidnapping in violation of R.C. 2905.01. Appellant subsequently pled not guilty to all of the charges at her arraignment.
Following lengthy negotiations, appellant reached a plea bargain with the Lake County Prosecutor's Office. The terms of the plea agreement were memorialized in a written document that was filed with the trial court on May 9, 1990. Pursuant to its terms, appellant agreed to plead guilty to all five counts of conspiracy to commit aggravated murder. The state agreed to hold the remaining ten felony charges in abeyance in exchange for appellant's cooperation with the pending investigation. The conditional agreement was tendered to the trial court, but sentencing was delayed until after the conclusion of all prosecutions related to the murders of the Avery family.
Appellant ultimately assisted the Lake County Prosecutor's Office in securing the convictions of other sect members who were involved in the murders. As a result, on January 24, 1991, the trial court accepted appellant's guilty pleas in relation to the five conspiracy counts and entered a nolle prosequi with regard to each of the remaining charges. Upon merging the conspiracy convictions for the purpose of sentencing, the trial court ordered appellant to serve an indefinite term of seven to twenty-five years in prison.
Appellant went before the Ohio Adult Parole Authority ("the Parole Board") for a parole hearing after serving only several years of her term of imprisonment. The Parole Board, however, declined an early release of appellant.
Thereafter, on September 19, 1996, appellant filed a pro se
petition for postconviction relief pursuant to R.C. 2953.21. The petition set forth four claims for relief: (1) ineffective assistance of trial counsel; (2) breach of the written plea agreement by the state; (3) bias by the trial court; and (4) the failure of the amended sentencing provisions of Am.Sub.S.B. No. 2 to apply retroactively.
Appellant also filed an affidavit of disqualification with the Supreme Court of Ohio pursuant to R.C. 2701.03. The affidavit requested that Judge Paul H. Mitrovich ("Judge Mitrovich") be disqualified from ruling on the postconviction relief petition. Judge Mitrovich was the trial judge who had accepted appellant's guilty pleas and sentenced her to prison. As grounds for the motion, appellant asserted that Judge Mitrovich demonstrated bias against her in certain letters that the judge had sent to the Parole Board recommending against her early release from prison.
On January 21, 1997, appellant submitted amendments to her petition for postconviction relief filed previously. After receiving an extension of time, the state filed its response in opposition to the petition on February 21, 1997.
The Supreme Court ultimately granted appellant's motion to disqualify Judge Mitrovich from participating further in the proceedings. The matter was reassigned to the docket of a different judge in the trial court.
On October 17, 1997, the trial court denied appellant's petition without holding an evidentiary hearing. In its judgment entry, the trial court determined that appellant had failed to establish any substantive ground for relief. Included within the entry were findings of fact and conclusions of law as required by R.C. 2953.21(C) and (G).
From this judgment, appellant filed a timely notice of appeal with this court. She now asserts the following assignments of error:
 "[1.] The trial court erred in summarily dismissing appellant Olivarez's R.C. 2953.21
post-conviction action without according her an evidentiary hearing.
 "[2.] The appellant did not enter a knowing, intelligent and voluntary plea to the charges."
Appellant's basic claim in the present appeal is that the trial court erred by denying her petition for postconviction relief without an evidentiary hearing. According to appellant, she was entitled to such a hearing because the record demonstrated that her guilty pleas were not knowing, intelligent, and voluntary, thereby establishing a substantive basis for relief. Since appellant's two assignments are interrelated, we will address them simultaneously.
A defendant attempting to have a criminal conviction vacated through a petition for postconviction relief is not automatically entitled to an evidentiary hearing. State v. Cole
(1982), 2 Ohio St.3d 112, 113; State v. Jackson (1980), 64 Ohio St.2d 107,110; State v. Worthy (May 30, 1997), Portage App. No. 96-P-0122, unreported, at 5, 1997 Ohio App. LEXIS 2370. Indeed, the current version of R.C. 2953.21 stipulates that "[b]efore granting a hearing on a petition * * *, the court shall determine whether there are substantive grounds for relief." (Emphasis added.) R.C. 2953.21(C). Consequently, the trial court must determine whether the petition, supporting affidavits, and the files and records of the proceedings establish any substantive basis for which relief could be granted. Id.
If no such basis exists, then the trial court may dismiss the petition sua sponte. State v. Sopjack (Aug. 22, 1997), Geauga App. No. 96-G-2004, unreported, at 7, 1997 Ohio App. LEXIS 3789. Upon doing so, the court must issue findings of fact and conclusions of law explaining its reasons for the dismissal.State v. Mapson (1982). 1 Ohio St.3d 217, 218.
In the trial court, appellant's pro se petition detailed four ways in which her constitutional rights were allegedly abrogated. On appeal, appellant is represented by court-appointed counsel who has conceded that only one issue is appropriate for appellate review, to wit: the claimed breach of the plea agreement by the state.
It is well-established that constitutional rights are implicated whenever a criminal defendant pleads guilty as part of a plea bargain with the prosecution. This is so because a guilty plea constitutes a waiver of the defendant's fundamental "rights to a jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself." Crim.R. 11(C)(2)(c).
In Santobello v. New York (1971), 404 U.S. 257, the United States Supreme Court held that the prosecution must honor any commitment or representation that it makes to a defendant as an inducement for a guilty plea:
 "This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." (Emphasis added.) Santobello, 404 U.S. at 262.
The Court in Santobello also held that the remedy for a breach of a plea bargain should be left to the sound discretion of the trial court. Id. at 263. The trial court may either allow the negotiated plea to be withdrawn or, alternatively, may require the specific performance of the plea bargain by ordering the prosecution to fulfill its promise. Id. Ohio courts have since adopted the Santobello analysis. See, e.g.,State v. Davenport (1996), 116 Ohio App.3d 6, 10-11; State v.Mathews (1982), 8 Ohio App.3d 145, 146.
A negotiated plea agreement is contractual in nature.State v. Ford (Feb. 18, 1998), Lawrence App. No. 97 CA 32, unreported, at 7, 1998 Ohio App. LEXIS 761. Therefore, the terms of a given plea agreement must be ascertained before it can be determined whether a party breached the agreement.
In the case sub judice, appellant entered into a written plea agreement with the state on May 9, 1990. Appellant, her trial counsel, and two assistant prosecuting attorneys were signatories to the document.
Pursuant to the agreement, appellant was to cooperate fully with the Lake County Prosecutor's Office and associated law enforcement agencies in the investigation and prosecution of all cases relating to the deaths of the Avery family. Thereafter, in exchange for appellant's guilty pleas to the five counts of conspiracy to commit aggravated murder, the state agreed to request dismissal of the remaining felony charges with prejudice. Beyond this, however, the state also promised the following:
 "4. In exchange for Deborah Sue Olivarez's cooperation with the State and pleas of 'GUILTY' to the charges of Conspiracy to Commit Aggravated Murder, the State of Ohio will agree that:
"* * *
 "d. At the time of sentencing, the Lake County Prosecutor's Office shall make known in writing to the sentencing court and to the Ohio Parole Authority the full extent and nature of Ms. Olivarez's cooperation; and
 "e. If Ms. Olivarez renders complete cooperation, the State will affirmatively recommend to the Ohio Parole Authorities that Ms. Olivarez be paroled at the earliest possible date consistent with statutory requirements. It is understood between the parties that Ms. Olivarez's actual date of parole is a matter completely within the discretion of the Ohio Parole Authorites [sic.]."
Sections 4(d) and (e) are at issue in this appeal. They set forth express obligations imposed on the state. In order to determine whether the state breached the plea agreement, we will examine what actions it took in an effort to comply with these provisions.
On January 24, 1991, the case against appellant came on for sentencing before the trial court. At that time, the state indicated to the trial court that appellant had fully complied with her end of the plea bargain. Pursuant to Section 4(d) of the plea agreement, the Lake County Prosecutor's Office also submitted a written sentencing memorandum to the trial court for inclusion into the permanent record of the case. In this sentencing memorandum, the state made known "the full extent and nature of Ms. Olivarez's cooperation" in the following manner:
 "The agreement between the State and Ms. Olivarez required that she provide accurate and truthful information and, if need be, testimony against other group members. Ms. Olivarez was very cooperative during her interviews and, furthermore, provided detailed information concerning activities of Jeffrey Lundgren and Alice Lundgren and information about other members of the group. She met with assistant prosecutors roughly 20 to 30 times, for extensive periods of time, to assist in debriefing prosecutors concerning the group activities and trial preparation. She provided essential testimony in all four of the criminal trials which resulted. It is the State's belief that her testimony was critical to the successful prosecutions in all four cases."
Section 4(d) required the Lake County Prosecutor's Office to make known in writing the full extent and nature of appellant's cooperation to the sentencing court and to the Parole Board. The January 24, 1991 memorandum obviously made this information known to the sentencing court.
It, however, also sufficed to make these details available to the Parole Board. Former Ohio Adm. Code 5120:1-1-09 provided that the Parole Board had to consider certain enumerated factors when a prisoner was eligible for release, including "[a]ny recommendations regarding the inmate's release made at the time of sentencing or at any time thereafter by the sentencing judge, presiding judge, prosecuting attorney, or defense counsel[.]" Ohio Adm. Code 5120:1-1-09(D).[1] By submitting the sentencing memorandum for incorporation into the trial court record, the Lake County Prosecutor's Office made this information available to the Parole Board for future reference in determining appellant's eligibility for early release.
The language of the January 24, 1991 memorandum more than fulfilled the requirement that the prosecution make known in writing the full extent and nature of appellant's cooperation at the time of sentencing. This was all that was required under Section 4(d) of the plea agreement.
We turn now to an analysis of the state's compliance with Section 4(e). Shortly after appellant commenced her term of imprisonment, the Parole Board contacted the Lake County Prosecutor for his parole recommendation as required by R.C.2967.03. On July 8, 1991, less than six months after appellant was sentenced for her crimes, the Lake County Prosecutor checked the appropriate statement on the recommendation form reflecting his belief that the Parole Board shouldconsider releasing appellant after she had served the minimum sentence required by law.[2] In the "General Comments" portion of the form, the Lake County Prosecutor wrote the following: "Although this defendant participated in the ghastly crimes of Jeffrey D. Lundgren, she cooperated extensively with the state; served as a 'star' witness on many occassions [sic] and made other convictions possible."
Subsequently, on October 28, 1994, the Lake County Prosecutor filled out an identical form recommending that the Parole Board should consider paroling appellant as soon as she was eligible. In the "General Comments" area, he wrote "Please refer to 7/8/91 notations."
Appellant sets forth various ways in which these two forms filled out by the Lake County Prosecutor breached Section 4(e) of the plea agreement. First, appellant takes issue with the fact that the Lake County Prosecutor wrote that she "participated in the ghastly crimes of Jeffrey D. Lundgren[.]" According to appellant, the characterization of the crimes as "ghastly" effectively negated the recommendation that she be considered for release at the earliest time possible.
Appellant was incarcerated because she pled guilty to five counts of conspiracy to commit aggravated murder. The Parole Board was certainly aware of the underlying nature of the high profile offenses to which appellant had pled guilty. In stating that appellant "participated in the ghastly crimes of Jeffrey D. Lundgren," the Lake County Prosecutor was not revealing anything new to the Parole Board.
The Lake County Prosecutor went on to write that appellant cooperated extensively with the state, served as a "star" witness, and helped to facilitate many other convictions of her co-conspirators. Most importantly, by checking off the most positive option available on both the July 8, 1991 and October 28, 1994 forms submitted to the Parole Board, the Lake County Prosecutor fulfilled his obligation under Section 4(e) of the plea agreement to "affirmatively recommend to the Ohio Parole Authorities that Ms. Olivarez be paroled at the earliest possible date consistent with statutory requirements[.]"
In her brief, appellant also seems to suggest that the state breached Section 4(e) of the plea agreement because it was not a proactive advocate for her early parole on the aforementioned forms. For instance, appellant complains that the Lake County Prosecutor did not describe in more detail the full extent and nature of appellant's cooperation on the "General Comments" sections of the forms. The state, however, was required to make that information known in writing at the time of appellant's sentencing under Section 4(d) of the plea agreement. As described previously, the state complied with this requirement by submitting the written sentencing memorandum to the trial court on January 24, 1991.
By contrast, Section 4(e) only mandated that the state had an affirmative duty to recommend that the Parole Board consider paroling appellant at earliest time she was eligible under the law. This section had no language requiring the Lake County Prosecutor to repeat the description of appellant's cooperation when filling out the forms sent to him by the Parole Board.
Appellant also points out that the Lake County Prosecutor failed to muster much effort or enthusiasm on her behalf. For example, appellant notes that the Lake County Prosecutor did not put forth the effort to attend her parole hearing so that he could personally voice his recommendation. The plea agreement, however, did not contain any language whatsoever requiring the prosecutor's attendance at a parole hearing.
As for whether the Lake County Prosecutor lacked enthusiasm, we observe that the plea agreement did not commit him to exude any particular level of zeal when recommending that appellant be considered for parole at the earliest possible date. The plea instrument merely imposed an affirmative duty on the Lake County Prosecutor to make the recommendation, and he did so on both forms submitted to the Parole Board. See, e.g., UnitedStates v. Benchimol (1985), 471 U.S. 453 (holding that Fed.R.Crim.P. 11 does not impose any implied-in-law obligation to make a particular sentencing recommendation "enthusiastically" to the court).
After reviewing the express terms of the written plea agreement, we conclude that appellant was not entitled to relief based on her claim of an abrogated plea agreement. The state did not breach either Section 4(d) or (e). As such, there is no basis for concluding that appellant's constitutional rights were violated by the submission of guilty pleas that were less than knowing, intelligent, and voluntary. The trial court, therefore, was well-within its discretion to dismiss her petition for postconviction relief without a hearing.
Based on the foregoing analysis, appellant's assignments of error are not well-taken. Accordingly, the judgment of the trial court is affirmed.
 ------------------------------ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., O'NEILL, J., concur.
[1] Ohio Adm. Code 5120:1-1-09 was repealed effective July 18, 1997. However, its provisions were incorporated into a new section. See Ohio Adm. Code 5120:1-1-07.
[2] Parenthetically, we note that the options listed on the recommendation form are limited. There is no option indicating that the prosecuting attorney "recommends" parole. Rather, the most positive response available is the one which the Lake County Prosecutor utilized, to wit: "I believe parole at minimum (regular eligibility) should be considered."