958 So.2d 465 (2007)
Philip E. MEHL, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-1018.
District Court of Appeal of Florida, Fourth District.
May 9, 2007.
Rehearing Denied June 29, 2007.
Benjamin S. Waxman of Robbins, Tunkey, Ross, Amsel, Raben & Waxman, P.A., Miami, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Daniel P. Hyndman, Assistant Attorney General, West Palm Beach, for appellee.
FARMER, J.
Facing 84 counts of unlawful sale of securities and sales without a license, which could yield a prison term of 400 years, defendant entered into a plea agreement containing the following provision:
"Alleged ETS payphone victims shall not testify at the sentencing hearing. Victims who purchased securities related to the filed charges and ETS payphones may testify only as to the filed charges. The prosecutor may not argue that Mehl's points on the punishment score sheet would have been higher had the State filed ETS charges."
None of the charges covered by the plea involved the ETS securities.
At the lengthy sentencing hearing defendant produced several character witnesses, including his accountant/income tax consultant. On cross examination, the state questioned the accountant about her own purchase of ETS securities. The state also cross examined his physician about purchasing ETS securities. When Mehl himself testified, the state cross examined him about sales of ETS. When the state presented witnesses, it examined some of them about ETS sales. The state called several purchasers of securities from Mehl, including four whom it examined about ETS sales. In closing argument about the sentence to be imposed, the state said the following:
"The most egregious, I think, is when he gets the fraud notice. We know that he got it because he sends it up to ETS to the President of ETS. Charles, please look at this. It says, `be wary of payphone investments. The telecommunication industry is growing and it's ringing up profits for scammers who prey on those looking to invest.'
. . .
The scoresheet on this and we waived guidelines, but it would go from zero to 400 years. Do you really. You know, you talk about all the crimes that we didn't charge him with. Sure we didn't charge him with racketeering and so forth. There's no need to. He scores up to 400 years."
After being sentenced, defendant filed his motion to withdraw his plea. He based the motion on the state's breach of the plea agreement provision quoted above. The trial court denied any relief, saying:
"Both Mr. Mehl and the State violated the non-testimony agreement. However *467 none of the testimony focuses on the prohibited area. The spirit of the agreement was not violated. Further, Mr. Mehl should not benefit from the State's minor violations of the plea agreement which he himself violated."
The denial of all relief brings us this appeal.
The leading case on the enforcement of plea agreements is Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). There, as here, a plea agreement contained provisions relating to sentencing, the New York prosecutor agreeing to make no recommendation as to sentence. At sentencing, the person representing the prosecutor's office had changed. The new person recommended the maximum sentence. Defense counsel objected and requested an adjournment to address the changed circumstances. Ultimately the trial judge denied the delay, stating that he was not influenced by the recommendation or anything the prosecutor could do and imposed the maximum sentence, citing his criminal record. On review in the United States Supreme Court, the Court held that the breach of a plea agreement by the state is a denial of due process. The Chief Justice explained:
"This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." [e.s.]
404 U.S. at 262, 92 S.Ct. 495. Addressing the remedy for a prosecutorial breach of a plea agreement, the Court held:
"the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration. The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, i.e., the opportunity to withdraw his plea of guilty." [e.s., f.o.]
404 U.S. at 262-63, 92 S.Ct. 495. The Court also took pains to show that it accepted the trial judge's assertion that he did not rely on the state's recommendation. Essentially the Court held that actual harm from the state's breach of a plea agreement is not the criterion; the mere breach itself is enough to require the Santobello remedy. Moreover, Santobello makes clear that if specific performance is the remedy, any resentencing "should be by a different judge." 404 U.S. at 263, 92 S.Ct. 495.
The Florida Supreme Court recognized and enforced Santobello in Tillman v. State, 522 So.2d 14 (Fla.1988). That case also involved a prosecutorial breach of a plea agreement limiting the state's presentation at sentencing. Finding that the state presented evidence "beyond the scope of this agreement" the court said:
"In Santobello, the Court remanded the case to state court to determine the appropriate remedy, plea withdrawal or specific performance of the agreement. We are faced with a similar decision. The record discloses that the prosecution *468 introduced evidence beyond what was agreed upon by the parties. This mere breach, no matter how slight, or whether the judge was influenced by it, is grounds for reversal. A defendant agrees to plead guilty based specifically on the agreement he or she has made with the state. Any breach of that agreement by the state renders the plea involuntary, as the plea is based on an agreement that was not fulfilled." [e.s.]
522 So.2d at 15-16. Again, the mere appearance of a breach by the state is itself grounds for relief regardless of whether the breach affected the sentence. Finding that defendant had not sought to withdraw his plea, the court remanded for resentencing before a new judge. 522 So.2d at 16; see also Koenig v. State, 597 So.2d 256, 258 (Fla.1992) (Tillman requires the court to assess the remedy due for the breach of the plea agreement, specific performance or withdrawal of plea; where plea was not otherwise shown to be voluntary, withdrawal of plea is proper remedy).
We see no reason to disturb the refusal to vacate the plea in this case. Omitting any suggestion that the plea was otherwise involuntary, defendant argues the state breached its undertaking by presenting evidence and argument plainly barred by the agreement. We conclude that defendant's consideration for the agreement can be fully satisfied by remanding for resentencing before a different judge. On resentencing the new judge shall not be made aware of the sentence imposed by the first judge.
We reject the state's argument that defendant himself could have breached the agreement and that would justify the state ignoring the sentencing bargain. Using the death penalty sentencing factors as an explanatory analogue only, we read the plea agreement to mean that the state agreed to limit itself as to evidence and argument about specific aggravating factors that if considered might otherwise lead to a lengthier sentence. But there is absolutely nothing in the agreement making plain that defendant agreed to limit himself in any way as to any mitigating evidence or argument. There is a long tradition in criminal sentencing allowing defendants wide latitude in evidence and argument seeking to lessen the sentence. When a plea agreement is open as to the specific sentence, in the absence of very clear language to the contrary, we should be very reluctant in contractual interpretation to infer any limitations on what defendant can present or argue in mitigation.
Without the agreement, the state had the right to present evidence about other crimes besides the ones charged; and nothing in the plea agreement barred the state from offering rebuttal evidence. But without clear language so requiring, it makes no sense to read the agreement to allow the state to present the proscribed evidence as rebuttal to his mitigating evidence. To do so is to make the entire agreement virtually meaningless because such a construction would return the state to its position before the plea agreement.
The agreement was clearly meant to limit the state's freedom of evidence and argument, not defendant's. The obvious purpose was to prevent the state entirely from using particular evidence and argument in any context. Defendant's principal interest in the plea agreement was to give him unfettered room to argue in mitigation.
Reversed and remanded for resentencing before a new judge.
GUNTHER and STONE, JJ., concur.