OPINION
{¶ 1} Defendant, Richard Quinn, appeals from his convictions and sentences for three theft offenses, in violation of R.C. 2913.02(A)(1).
 {¶ 2} The convictions were entered on Quinn's negotiated pleas of guilty to the three offenses, which were charged as fifth degree felonies. In exchange, the State agreed to recommend concurrent sentences. The court rejected that alternative and ordered that sentences be served consecutively.
 {¶ 3} Upon hearing his sentence, Defendant Quinn immediately moved to withdraw his guilty pleas, arguing that he had entered them on the understanding that the court would impose concurrent sentences the State recommended. The court denied Quinn's request, finding that his dissatisfaction with the sentence imposed was not grounds to permit him to withdraw his guilty pleas.
 {¶ 4} Quinn filed a timely notice of appeal. He presents three assignments of error. We shall consider the first and second together.
 FIRST ASSIGNMENT OF ERROR {¶ 5} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT DURING THE PLEA HEARING BY FAILING TO ASSURE THAT APPELLANT ENTERED HIS GUILTY PLEA WITH FULL KNOWLEDGE AND AWARENESS OF THE POTENTIAL CONSEQUENCES OF HIS GUILTY PLEA."
 SECOND ASSIGNMENT OF ERROR {¶ 6} "THE TRIAL COURT ERRED IN CONVICTING AND SENTENCING APPELLANT TO MAXIMUM CONSECUTIVE SENTENCES AS THE PLEA AND SENTENCING PROCEEDINGS WERE FUNDAMENTALLY UNFAIR IN VIOLATION OF APPELLANT'S SUBSTANTIVE DUE PROCESS RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTION."
 {¶ 7} Pleas of guilty or no contest are constitutionally insufficient to support a conviction unless the accused enters the plea knowingly, intelligently, and voluntarily. Kercheval v. United States
(1927), 274 U.S. 220; State v. Bowen (1977), 52 Ohio St.2d 27. The colloquies between the court and the defendant that Crim.R. 11(C)(2) mandate before pleas of guilty or no contest may be accepted are intended to insure that those constitutional standards are satisfied.
 {¶ 8} The terms of a plea bargain must be the result of an explicit agreement. United States v. Benchimol (1985), 471 U.S. 453. Crim.R. 11(F) requires the court to memorialize the terms of any plea agreement, stating:
 {¶ 9} "When, in felony cases, a negotiated plea of guilty or no contest to one or more offenses charged or to one or more other or lesser offenses is offered, the underlying agreement upon which the plea is based shall be stated on the record in open court."
 {¶ 10} Defendant entered his pleas on July 26, 2002, in a hearing before Judge Jeffrey M. Welbaum. When the case was called the court recited the terms of the plea bargain, stating:
 {¶ 11} "Basically, what I have here is the State agreed to recommend concurrent sentences, drop pending misdemeanors and agreed to file no additional charges, and there's a written plea agreement that's being executed by the parties, is that correct?" (T. 1).
 {¶ 12} Defendant's attorney acknowledged that the court's recitation was correct. The following Crim.R. 11(C) colloquy ensued:
 {¶ 13} "THE COURT: Are there any other terms and conditions other than that I've stated on the record?
 {¶ 14} MR. QUINN: No, sir.
 {¶ 15} THE COURT: If there's any other promises that anyone has made you or any other deals, I'm not aware of those and not boundby those, okay? Do you understand that?
 {¶ 16} MR. QUINN: Yes, sir.
 * * * {¶ 17} THE COURT: Okay. Let's talk about the plea bargain. You told me that all the terms and conditions of the plea bargain were referred to on the record, is that right?
 {¶ 18} MR. QUINN: Yes, sir.
 {¶ 19} THE COURT: If there's any other terms and conditions of theplea bargain that I'm not aware of, I'm not bound by it and neither isJudge Lindeman. Do you understand that?
 {¶ 20} MR. QUINN: Yes, sir.
 {¶ 21} THE COURT: This case has been assigned to Judge Lindeman for further proceedings. With permission of the parties, I'll go ahead and take the change of plea and then Judge Lindeman will be the sentencing Judge. Is that agreed to by the parties?
 {¶ 22} MR. BENNETT: Yes.
 {¶ 23} MR. KING: It is, Your Honor." (T. 2, 5.) (Emphasis supplied.
 {¶ 24} The court then accepted Defendant's guilty pleas, after further discussion concerning the rights he waived as a result.
 {¶ 25} Defendant was sentenced on September 16, 2002, in a hearing before Judge Robert J. Lindeman. When the court asked the prosecutor whether there was "anything you'd like to indicate to me on the issue of sentencing," the prosecutor replied, "Nothing, Judge." (T. 4).
 {¶ 26} Why the State didn't perform on its promise to recommend concurrent sentences is not explained, though it might have been because Defendant had been arrested and charged with another offense while he was out of jail and awaiting sentencing.
 {¶ 27} The court conducted a review of Defendant's extensive criminal record, and it went on to sentence Defendant to the maximum term of imprisonment for the three counts of theft, twelve months on each, and ordered that those sentences be served consecutively. That prompted the following exchange between Defendant and the court:
 {¶ 28} "MR. QUINN: But when I, my understanding was when I pled guilty to these three felony thefts that my sentence would be run concurrent and no other charges would be brought up and pending —
 {¶ 29} THE COURT: No other charges. Yeah.
 {¶ 30} MR. QUINN: And the pending misdemeanor would be dropped.
 {¶ 31} THE COURT: Okay. And probably that misdemeanor was dropped.
 {¶ 32} MR. KING: It was, Your Honor.
 {¶ 33} THE COURT: The new charges that you have are a result of the new criminal offenses you committed while you were out on bond.
 {¶ 34} MR. QUINN: Yeah but I didn't commit the crimes, sir.
 {¶ 35} THE COURT: Okay. Well I don't want to argue that —
 {¶ 36} MR. QUINN: I mean —
 {¶ 37} THE COURT: — cause I agree you're —
 {¶ 38} MR. QUINN: RIGHT. Like my attorney was trying to tell you, uh, you know, people knew that, because of my past record I've never got an OR bond.
 {¶ 39} THE COURT: Yeah.
 {¶ 40} MR. QUINN: You know, uh, I've never got no probation or anything like that, no kind of treatment and they figured out what I was up to and the people that I was supposed to be setting up and getting a conviction on they, uh, they beat me up and they're the ones, you know, they took the wire and they took the, you know they took the money.
 {¶ 41} THE COURT: Well that is a —
 {¶ 42} MR. QUINN: But my understanding was that even before all that went on that, uh, it was supposed to be run concurrent and that's why I, that's why I pled to the three felonies in the first place.
 {¶ 43} THE COURT: There was a (sic) recommendation that the State would recommend concurrent sentencing but I rejected that. I'm not bound by that agreement unless I go along with it and the reason that I'm —
 {¶ 44} MR. QUINN: Okay. Well then I want to withdraw my guilty plea and go ahead and set this matter for trial then.
 {¶ 45} THE COURT: You don't have a right to withdraw your guilty plea just because you don't like the sentence you got." (T. 9, 10.)
 {¶ 46} The court was apparently aware when it imposed consecutive sentences that the State had agreed to recommend concurrent sentences in exchange for Defendant's agreement to withdraw his not guilty pleas and enter pleas of guilty to the three theft offenses. However, at the sentencing hearing the prosecutor made no sentencing recommendation. Whatever his reasons, the prosecutor's failure to recommend concurrent sentences was a breach of the plea bargain agreement. In that event, the court should either require specific performance or allow the defendant to withdraw his plea. Santobello v. New York (1971), 404 U.S. 257,92 S.Ct. 495, 30 L.Ed.2d 427. The court declined to do that, citing the "manifest injustice" standard that Crim.R. 32.1 imposes for post-sentence motions to withdraw. One authority has observed that "[h]olding a defendant to his plea despite the prosecutor's breach of a plea bargain will result in manifest injustice." Katz and Gianelli, Criminal Law, Baldwin's Ohio Practice (Second Edition), Section 46:4, at p. 193.
 {¶ 47} Defendant Quinn doesn't argue that the trial court abused its discretion when it refused to allow him to withdraw his guilty pleas, however. Instead, Defendant argues that when the court said in the plea colloquy that it would not be bound by any promises of which it was unaware, by negative implication the court informed Defendant that it would be bound by promises of which it was aware. Because the court then knew that the State had agreed to recommend concurrent sentences, the court was bound to impose concurrent sentences; or, at least, Defendant was misled as a result of the court's statements to believe that the court would impose concurrent sentences.
 {¶ 48} Crim.R. 11(C)(2)(a) requires the court to determine that a defendant who enters a plea of guilty or no contest understands the maximum penalty for the conviction that will or may result. The plea refers to and concerns the charge and the particular offense involved. When the defendant enters multiple pleas to multiple charges, the court is not required by the terms of Crim.R. 11(C)(2)(a) to also determine that the defendant understands that the resulting sentences may be imposed consecutively. State v. Johnson (1988), 40 Ohio St.3d 130.
 {¶ 49} Defendant's complaint, however, is that he was misled by the court's disclaimer to believe that the concurrent sentences which the State had agreed to recommend would be imposed. Courts typically avoid that implication when a negotiated guilty or no contest plea is entered by informing the defendant that the court is not bound by any sentencing recommendation the State has agreed to make. Then, the court does not abuse its discretion when it rejects the recommendation and imposes a harsher sentence. State v. Buckley (August 25, 2000), Darke App. No. 1509; State v. Williamson (February 12, 1997), Summit App. No. 17927;State v. Darmour (1987), 38 Ohio App.3d 160.
 {¶ 50} Here, the trial court didn't give that specific advice when it accepted Defendant's guilty pleas, though it attempted to do so by stating that it was not bound by any terms or conditions of the plea bargain it had recited but of which it wasn't aware. The point that should have been made was that the court wasn't bound at all by the parties' agreement. State v. Elliott (1993), 86 Ohio App.3d 792.
 {¶ 51} From Defendant's prompt reaction when his sentence was imposed, it appears that he actually expected that concurrent sentences would be imposed. He said that was his "understanding." However, and as we pointed out above, the court was not required by Crim.R. 11(C)(2) to determine what Defendant's understanding was in that respect. Understandings can come from many sources. Only if, as Defendant now contends, his "understanding" was a product of the court's statements may his sentences be reversed because he was misled.
 {¶ 52} We believe it's unlikely that criminal defendants are guided by the canon of statutory construction, "expressio unius", meaning that expression of one thing suggest the exclusion of others, or vice versa. Further, even if that doctrine applies to advice such as this which a trial court gives, it involves only a suggestion, not a positive representation. Defendant's contentions ignore the meaning of the word recommendation, which derives from the medieval Latin word recommandare, meaning only "to commit to the care of." (Oxford Dictionary of Word Histories, Oxford University Press, 2002 Ed.) What "care" is then given is a different matter. It is difficult to extract the promise Defendant says he understood was made to him by the court, in view of those matters. Nevertheless, we must reverse. Several considerations guide our decision.
 {¶ 53} First, a prosecutor's agreement to recommend a less onerous sentence than one the law permits is a significant and powerful inducement for a defendant to withdraw a not guilty plea and enter a plea of guilty or no contest. Criminal Defendants, who typically seize on any positive implication, can rely too much on the weight of a promise when they elect to waive their trial rights in exchange for the promised recommendation. That is why, when the state has agreed to make a sentencing recommendation in exchange for a guilty or no contest plea, the preferred practice is for the court to forewarn the defendant that the court isn't bound by the recommendation. State v. Darmour.
 {¶ 54} Second, and inasmuch as we've indulged in Latin references, we believe that a proceeding on a plea of guilty or no contest, like Caesar's wife, must be above reproach. The same is true of proceedings on pleas of guilty or no contest. The interests of justice are not served when a defendant believes that he's been tricked or misled by the court, as Defendant Quinn obviously does, mistaken though he may be. Ironically, the trial court appears to have been going to great lengths to avoid any misunderstanding when it gave the advice in issue.
 {¶ 55} Third, this case is unusual because one judge accepted the guilty plea and a different judge imposed Defendant's sentences. The sentencing judge could not know what the other judge had said with respect to what he, the sentencing judge, wasn't bound by. In that circumstance, it's difficult to weigh a request to withdraw a plea when the request is predicated on the effect of the earlier events.
 {¶ 56} Finally, the court should have granted Defendant's expressed request to withdraw his guilty pleas after the State, whatever its reasons were, breached the plea bargain agreement. Santobello v. NewYork.
 {¶ 57} The totality of these matters lead us to conclude that Defendant's guilty pleas were less than knowing, intelligent, and voluntary. The first and second assignments of error are sustained.
 THIRD ASSIGNMENT OF ERROR {¶ 58} "THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES UNDER R.C. 2929.14(E)(4)AS THE CONSECUTIVE SENTENCES EXCEEDED THE MAXIMUM PRISON TERM ALLOWED BY DIVISION R.C. 2929.14(A) FOR THE MOST SERIOUS OFFENSE OF WHICH APPELLANT WAS CONVICTED AND WERE CONTRARY TO LAW."
 {¶ 59} Unlike the specific error stated above, Defendant argues that the trial court failed to set forth the necessary statutory findings and further failed to give its reasons for imposing maximum and consecutive sentences. We disagree.
 {¶ 60} R.C. 2929.14(C) authorizes a court to impose the maximum prison term for any offense only upon offenders who commit the worst form of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under R.C.2929.14(D)(3), and upon certain repeat violent offenders pursuant to R.C. 2929.14(D)(2). The trial court must also give its reasons for imposing the maximum prison term. R.C. 2929.19(B)(2)(e).
 {¶ 61} At the sentencing hearing the trial court stated that it had reviewed the presentence investigation report. The court then examined the various sentencing factors. R.C. 2929.12 — 2929.14. In imposing sentence for these fifth degree felonies, the court observed that Defendant has previously served a prison term. R.C. 2929.13(B)(1)(g). Looking at the factors set out in R.C. 2929.12, particularly those relating to recidivism, the court noted that Defendant has a number of probation revocations as a juvenile, and thus Defendant has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child, and/or Defendant has not responded favorably to sanctions previously imposed for criminal convictions. R.C. 2929.12(D)(3).
 {¶ 62} The court also commented extensively upon Defendant's history of criminal convictions. R.C. 2929.12(D)(2). The court observed that combining his delinquency adjudications and adult convictions, Defendant had twelve separate convictions for theft offenses in the past eighteen years. The court noted that Defendant's prior record is one of the worst the court had ever seen, and that over the past eighteen years Defendant has never been out of jail and on the streets for more than one year without being convicted of a new theft offense. The court concluded that the recidivism factors far outweigh the lack of recidivism, that Defendant is not amenable to any community control sanctions, and that a prison sentence is consistent with the purposes and principles of felony sentencing set out in R.C. 2929.11. See: R.C. 2929.13(B)(2)(a).
 {¶ 63} The trial court then stated:
 {¶ 64} "I'll determine, Mr. Quinn, that on the three felony counts, felonies of the fifth degree that the appropriate sentence should be the twelve months therefore it's the order of the Court you serve twelve months in the Ohio Department of Rehabilitation and Correction on counts one, two and three. I've given you the maximum sentence because you pose the greatest likelihood of committing future crime and the basis for that is your prior twelve theft convictions, eleven, the twelve theft convictions that you've had over, well, gees the last eighteen years."
 {¶ 65} Clearly, the court made the necessary finding required by R.C. 2929.14(C) in order to justify the maximum sentence, and the court gave its reasons for that finding. The court's finding is supported by this record.
 {¶ 66} A trial court may impose consecutive sentences "if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender, and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 * * * {¶ 67} "(C) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." R.C. 2929.14(E)(4).
 {¶ 68} The trial court must give its reasons for imposing consecutive sentences. R.C. 2929.19(B)(2)(c).
 {¶ 69} Here, the trial court stated:
 {¶ 70} "Now I've got to decide what to do with those sentences and after analyzing your record and all the factors here I'm going to determine that those sentences should run consecutively, one after the other. That's necessary to protect the public and to punish you and that type of a sentence would not be disproportionate to your conduct or the danger you pose and your criminal history shows that consecutive sentences are necessary to protect the public and that's why I'm giving it to you."
 {¶ 71} Clearly, the trial court made the necessary findings required by R.C. 2929.14(E)(4) in order to justify consecutive sentences. Although the court did not use the word "reasons" when discussing its decision to impose consecutive sentences, we are nevertheless satisfied that the court's reasons were adequately set forth in this record. The court's discussion and remarks concerning Defendant's extensive history of theft convictions demonstrates that the court considered Defendant's criminal history as the reason for the consecutive sentences. The connection is apparent from the court's recitation at the sentencing hearing. Moreover, this record supports the court's findings.
 {¶ 72} Defendant additionally argues in this assignment of error that consecutive sentences are disproportionate to his conduct and the danger he poses to the public. The trial court specifically found otherwise, and this record supports the court's finding. After examining the recidivism factors in R.C. 2929.12, the court determined that because of Defendant's extensive criminal history and his previous unsuccessful attempts at rehabilitation, the recidivism factors far outweigh the lack of recidivism, and that Defendant poses the greatest likelihood of committing future crimes. Given those findings, which are supported by this record, Defendant's consecutive sentences are not disproportionate to the seriousness of his conduct or the danger he poses.
 {¶ 73} This assignment of error is overruled.
Conclusion
 {¶ 74} Having sustained the first assignment of error, we will reverse the judgment from which this appeal was taken and remand for further proceedings on the charges against the Defendant.
WOLFF, J. and YOUNG, J., concur.