DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a sentencing judgment of the Erie County Court of Common Pleas. Following a negotiated plea, appellant pled guilty to three felony counts; abduction, sexual battery, and cocaine trafficking. Appellant was sentenced to four years incarceration on the abduction conviction, four years incarceration on the sexual battery conviction, and 12 months incarceration on the drug trafficking conviction. All sentences were ordered to be served concurrently. For the reasons set forth below, the judgment of the trial court is affirmed.
 {¶ 2} On appeal, appellant sets forth the following two assignments of error:
 {¶ 3} "No. 1 The trial court committed prejudicial error by not complying with the agreement of the state and the defendant by essentially `forcing' the state to break their promise to stay `mute' at the defendant's sentencing hearing in an attempt to enlarge the record to support a lengthier sentence.
 {¶ 4} "No. 2 The state of Ohio violated their promise to the defendant to stay `mute' by having a police officer testify at sentencing and turning their information over to the Erie County Probation Department, which in turn spoke on `behalf' of the state."
 {¶ 5} The following undisputed facts are relevant to the issues raised on appeal. This case arises from an incident in the city of Sandusky on October 1, 2003. Appellant, a crack cocaine dealer, was riding around Sandusky in a motor vehicle with three acquaintances. The vehicle was driven by Shawn Vessey. Appellant was a front seat passenger. Robin Aumend, the victim and one of appellant's crack customers, was seated in the backseat with another passenger, Alvin Lee.
 {¶ 6} The vehicle stopped behind a Laundromat. Appellant demanded to switch places with Lee, positioning himself next to Aumend. Appellant believed Aumend had shortchanged him on drug transactions. Appellant struck and punched the victim. Appellant forcibly engaged in various acts of intercourse with Aumend. Aumend did not consent. Aumend sustained significant bruising. DNA evidence confirmed appellant committed the sexual acts. Aumend reported the rape several hours after it occurred.
 {¶ 7} Appellant claims the incident was not rape, but merely a "sex for crack" transaction necessitated by Aumend's inability to pay her crack debt. Appellant concedes being a crack dealer. Appellant concedes supplying crack cocaine to Aumend. Appellant concedes engaging in acts of intercourse with Aumend on October 1, 2003.
 {¶ 8} On May 14, 2004, appellant was indicted for two counts of kidnapping, in violation of R.C. 2905.01(A)(4), two counts of rape in violation of R.C. 2907.02(A)(2), and two counts of cocaine trafficking in violation of R.C. 2925.03(A)(1).
 {¶ 9} Counsel for appellant negotiated a voluntary plea agreement between appellant and the state. The six first degree felony counts were reduced to one fourth degree felony and two third degree felony counts. On August 4, 2004, appellant pled guilty to abduction in violation of R.C. 2905.02, sexual battery in violation of R.C. 2907.03, and trafficking in cocaine, in violation of R.C. 2925.03(A)(1).
 {¶ 10} On December 17, 2004, a sentencing hearing was conducted before visiting Judge John T. Patton. As part of the plea arrangement, the state of Ohio agreed that it would not take a position on sentencing. At sentencing, the prosecutor stated: "Pursuant to the negotiated plea agreement, the state of Ohio is not going to take any position as it relates to sentencing."
 {¶ 11} At sentencing, the judge heard from multiple parties. The judge permitted appellant and appellant's father to furnish detailed mitigating statements. The judge called Officer Jarrett of the Sandusky Police Department. Counsel for appellant conducted what amounted to a cross-examination of Jarrett. The record shows counsel for appellant enjoyed wide latitude in the nature and volume of adversarial questions presented to Jarrett. Counsel presented a litany of questions attacking and impugning the victim.
 {¶ 12} The court next called Kelli Bias from the probation department. A presentencing investigation report had been prepared. Finally, the court heard a victim impact statement from Aumend.
 {¶ 13} At the conclusion of the victim impact statement, counsel for appellant was permitted to engage in another tirade, unabashedly impugning the victim's character and credibility. Counsel for appellant stated:
 {¶ 14} "While she's in tears over there, she forgot to tell you that she's a convicted felon. She forgot to tell you that she's a crack addict. She forgot to tell you that she's currently under indictment. She went to purchase crack with $2 and no underwear. She put herself in a situation. Yes, Damonprobably shouldn't have had sex with her. We were not there. I don't live in that world. She does, he does. He tells me that it was sex for crack. She claims rape. The DNA says yes, he had intercourse with her. As far as any force that was used, we don't know. We have her word and she's an admitted liar. She's aconvicted liar."
 {¶ 15} The verbal attacks against the victim permeate the transcript of the sentencing hearing and all portions of the record in which appellant, his father, and his counsel, took part. This is particularly troublesome considering the case was settled by plea agreement. These attacks did not take place in the heated course of a jury trial, but during a post-plea sentencing hearing. Decency and decorum were decidedly absent.
 {¶ 16} We will address appellant's two assignments of error concurrently. Both assignments of error are rooted in a common premise. Both assignments assert the plea agreement was breached. Counsel for appellant argues, "The gist of these two assignments of error is that the court committed prejudicial error by, in a sense, looking for `overriding factors' in an effort to sentence the defendant beyond community control and the minimum sentence. The state and the defense had a deal. The court broke it."
 {¶ 17} There is no evidence in the record that the state agreed to a minimum sentence and/or community control. On the contrary, the very plea agreement at issue was that the state of Ohio would not take any position on sentencing. The transcript of the sentencing hearing verifies the state of Ohio did not take any position on sentencing. Regardless, sentencing lies within the discretion of the trial court.
 {¶ 18} Appellant relies upon the 35-year-old case ofSantobello v. New York (1971), 404 U.S. 257, in support of the claim that the state breached the plea agreement. Even a cursory review of Santobello shows it offers no legal support to appellant's case. In Santobello, the state agreed it would make no sentencing recommendation.
 {¶ 19} The state breached this agreement by specifically recommending maximum sentencing of the defendant to the trial judge. The defendant was sentenced to the maximum. By contrast, the record shows neither the state nor anyone on behalf of the state made any sentencing recommendation, let alone a maximum one, to the court. The record shows appellant did not receive the maximum sentence. Appellant's sentence was substantially beneath maximum. Santobello is materially distinguishable from, and inapplicable to, this case.
 {¶ 20} The trial court is vested with broad discretion in executing its duties in criminal cases. Trial court discretion is rooted not only in prevailing "abuse of discretion" case law, but also as a matter of law, pursuant to statute.
 {¶ 21} Our review of the sentencing court's actions is pursuant to an abuse of discretion standard. An abuse of discretion is more than a mere error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 22} R.C. 2929.19 establishes precisely who may present information to a trial court during a sentencing hearing. The statute states: "At the hearing, the offender, the prosecuting attorney, the victim or the victim's representative * * * and, with the approval of the court, any other person may presentinformation relevant to the imposition of sentence in the case."
 {¶ 23} In this case, the court heard from appellant, appellant's father, appellant's counsel, the victim, the probation officer, and the investigating police officer. The trial court did not abuse its discretion in exercising its statutory authority in hearing from these relevant individuals.
 {¶ 24} The state agreed not to "take any position as it relates to sentencing." The record clearly shows the prosecutor, police officer, and probation officer took no position on sentencing. The state complied with the plea agreement.
 {¶ 25} The sentencing transcript reveals a pattern. Neither appellant, appellant's father, nor counsel hold appellant responsible for what occurred. They blame appellant's unemployment, his need to pay rent, his girlfriend's low-paying job, his duties to his daughter, and most often, the victim.
 {¶ 26} Appellant's father greatly oversimplified the nature and gravity of the circumstances. Appellant's father asserted, "He's just a hardworking young man. And he's been a hardworking young man up until, like I said, just til he lost his job and lost his way for a moment. And since being charged with this, he hasn't committed any other crimes. So he's basically not a menace to society. He's just a young man who's lost his way for a minute." Such an interpretation of the circumstances does not comport with the record.
 {¶ 27} The record shows a young man upset that his girlfriend did not earn much money as a pizza delivery driver. The record shows a young man who decided to become a crack dealer rather than live within his means. The record shows that while dealing crack cocaine, the young man became angry, thinking a crack customer owed him more money. The record shows the young man decided he wanted "sex for crack" in lieu of complete payment. The record shows the "sex for crack" was not with the consent of the victim. She was raped. Despite the best efforts of appellant, his family, and his counsel to convince the court otherwise, the status of the victim did not negate the legal consequences of her rape by appellant.
 {¶ 28} Appellant's misguided indignation and lack of remorse is evident by his own testimony. Appellant stated in relevant part during his mitigating speech:
 {¶ 29} "Last year I guess I started selling drugs in order to pay the rent. I was under a lot of pressure. I had a girlfriend, who is only a pizza delivery driver; I had a daughter. Really, I felt like I had nowhere to resort to. * * * I could show remorse for being in everybody's way here today. I am sorry for that. I could basically express remorse for everything besides the rape and abduction charges because in my heart today, Istill feel like I have not committed a crime against anybody inthis room, personally." Appellant's unabashed lack of remorse flies in the face of mitigation. Four years may be perceived as minimal given the nature and circumstances of the offenses.
 {¶ 30} The judge's frustration at the verbally vicious conduct of counsel for appellant became apparent toward the end of the hearing. Counsel for appellant repeatedly insisted, despite admonitions by the court, on referring to the victim as a "crack addict." One exchange went as follows:
 {¶ 31} "Ms. Newell: She's a crack addict.
 {¶ 32} "The Court: Oh, now, here we go again.
 {¶ 33} "Ms. Newell: She's a crack addict.
 {¶ 34} "The Court: I don't want you to say a word.
 {¶ 35} "Ms. Newell: A crack addict will do just about anything for
 {¶ 36} "The Court: Oh yeah. How about the crack that's selling the stuff?
 {¶ 37} Miss Newell: But you're not going to hold herresponsible.
 {¶ 38} "The Court: Now, you just listen young woman! She could very well be addicted to drugs very badly.
 {¶ 39} "Ms. Newell: And I suppose that's his fault.
 {¶ 40} "The Court: And that doesn't mean she's a crack. Andno one has a right to rape a prostitute, not alone a victim ofdrugs."
 {¶ 41} Appellant made every effort to make this case about the victim, rather than his criminal conduct against the victim.
 {¶ 42} The underlying issue we must determine is whether the trial court committed prejudicial error, and abused its discretion, at appellant's sentencing hearing. Appellant has provided absolutely no compelling or controlling legal authority in support of that proposition. The court's conduct was authorized by R.C. 2929.19. The court heard relevant information from relevant persons. There was no abuse of discretion.
 {¶ 43} There was an attitude displayed at sentencing which could fairly be characterized as unreasonable, arbitrary, and unconscionable. It was not on the part of the court or the state of Ohio.
 {¶ 44} The state of Ohio abided by its plea agreement with appellant. It took no position on sentencing. The plea agreement was honored. Appellant's assignments of error are not well-taken.
 {¶ 45} On consideration whereof, this court finds appellant was not prejudiced and substantial justice was done. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Singer, P.J., Skow, J., Parish, J., concur.