FILED
United States Court of Appeals
Tenth Circuit

October 7, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOSE MENERA-ALVAREZ,

    Defendant-Appellant.

No. 15-3197
(D.C. No. 2:14-CR-20066-JAR-3)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH,** Chief Judge, **BRISCOE** and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore, submitted without oral argument.

Defendant Jose Menera-Alvarez (Menera) pleaded guilty, pursuant to a written Rule 11(c)(1)(C) plea agreement, to aiding and abetting another in possessing with intent

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

to distribute 5 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 18 U.S.C. § 2. The district court accepted his plea and subsequently sentenced him to the 100-month term of imprisonment called for in the written plea agreement. Shortly thereafter, Menera moved to withdraw his plea as unknowing and involuntary, arguing that the government, by offering his codefendant a lower sentence in exchange for a plea deal, breached an oral promise it made to Menera at the time of his plea bargaining. The district court denied Menera's motion. Menera now appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we deny the government's motion to dismiss the appeal for lack of jurisdiction and affirm the judgment of the district court.

I

In June and July of 2014, law enforcement agents from the Kansas Bureau of Investigation and the Department of Homeland Security-Homeland Security Investigations used a confidential informant (CI) to make controlled purchases of methamphetamine from an individual named "Manuel" in Kansas City, Kansas. Surveillance of those controlled purchases and the individuals involved in supplying the CI with methamphetamine led to the arrests of Menera and two co-defendants, Emanuel Godinez-Perez and Gilbert Cano-Bahena.

On July 25, 2014, a criminal complaint was filed charging Menera, Godinez-Perez and Cano-Bahena with conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1),

(b)(1)(A)(viii), 846, and 18 U.S.C. § 2, and possession with the intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii), and 18 U.S.C. § 2. The complaint also alleged two separate counts of distribution solely against Godinez-Perez. On August 6, 2014, a federal grand jury returned an indictment setting forth the same four charges.

On May 14, 2015, Menera filed a petition to enter a plea of guilty to an information charging him with one count of aiding and abetting Cano-Bahena in possessing with intent to distribute 5 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2. Along with his petition, Menera filed a copy of a written plea agreement that he had entered into with the government on that same day pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). In the plea agreement, Menera agreed to plead guilty to the conspiracy charge and the parties "propose[d], as an appropriate disposition of the case, a sentence of **100 months in prison; 4 years of supervised release; no fine; and the mandatory special assessment of $100 to be paid during the Defendant's incarceration.**" ROA, Vol. 1 at 34 (emphasis in original). Relatedly, the plea agreement noted that "because th[e] proposed sentence [wa]s sought pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties [we]re not requesting imposition of an advisory guideline sentence." Id. at 35. The plea agreement stated that if the district court accepted Menera's "plea of guilty, [Menera] w[ould] not be permitted to withdraw it." Id. Lastly, under the terms of the plea agreement, Menera "waive[d] any right to appeal or collaterally attack any matter in connection with this

-3-

prosecution, [his] conviction, or the components of the sentence to be imposed herein including the length and conditions of supervised release," id. at 36, except that the parties agreed that Menera "in no way waive[d] any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct," id. at 37.

The district court accepted Menera's guilty plea that same day, finding that it was entered freely and voluntarily and with full understanding of its consequences.

On June 2, 2015, Menera filed a motion to withdraw his guilty plea. In his motion, Menera alleged that government counsel, in the course of negotiating the plea agreement with Menera, stated that he would not offer codefendant Cano-Bahena "a plea offer of less than 100 months." Id. at 44. Menera alleged that he relied on this statement "in changing his mind, accepting the government's offer and pleading guilty." Id. at 45–46. Menera further alleged that after the district court accepted his plea agreement, he learned that the government had made Cano-Bahena a plea offer "for an 85 months [sic] sentence under Rule 11(c)(1)(C)." Id. at 45. Ultimately, Menera argued that government counsel's statements rendered his guilty plea unknowing and involuntary.

The government filed a response to Menera's motion, asserting that government counsel's statements to Menera regarding the plea offer that would be made to Cano-Bahena were true at the time of Menera's plea agreement because, at that time, "the government had no intention of allowing either [defendant] to plea to less than 100 months." Id. at 89. The government explained that, "after engaging in trial preparation" with respect to its case against Cano-Bahena, it "was in a better position to evaluate the

strength of its case and viability of evidence against" Cano-Bahena. Id. at 90. And those circumstances, the government asserted, ultimately caused it to revise its plea offer to Cano-Bahena.

On June 22, 2015, the district court heard arguments on Menera's motion and ultimately denied the motion at the conclusion of the hearing. The district court subsequently sentenced Menera to a term of imprisonment of 100 months, to be followed by a four-year term of supervised release.

Menera filed a timely notice of appeal. The government has since moved to dismiss the appeal for lack of jurisdiction.

II

*The government's motion to dismiss*

Before addressing the arguments asserted by Menera on appeal, we must first address the government's motion to dismiss the appeal for lack of jurisdiction. The government argues that 18 U.S.C. § 3742(a) and (c), the provisions that govern appellate review of sentences imposed pursuant to Rule 11(c)(1)(C) plea agreements, "limit the circumstances under which a defendant may appeal." Motion to Dismiss at 3–4. We have held, in construing those statutory provisions, that "[w]here a defendant agrees to and receives a specific sentence, that defendant may only appeal the sentence if it was (1) imposed in violation of law, (2) imposed as a result of an incorrect application of the guidelines, or (3) is greater than the sentence set forth in the plea agreement." United States v. Silva, 413 F.3d 1283, 1284 (10th Cir. 2005) (citing 18 U.S.C. § 3742(a) and (c)).

-5-

The government notes that in this case, Menera received the precise sentence called for in his Rule 11(c)(1)(C) plea agreement, and he does not claim on appeal that his sentence was imposed in violation of law or was the result of an incorrect application of the guidelines. Consequently, the government argues, § 3742(c) prohibits Menera from appealing and deprives this court of jurisdiction.

The government's arguments are misguided. Although the legal principles cited by the government are correct, the fact of the matter is that Menera is not seeking "review of an otherwise final sentence." 18 U.S.C. § 3742(a). Rather, he is seeking to appeal the district court's denial of his motion to withdraw his guilty plea. Consequently, § 3742 is inapplicable and, instead, 28 U.S.C. § 1291 provides this court with appellate jurisdiction to review the district court's denial of Menera's motion to withdraw his guilty plea. E.g., United States v. Garcia, 577 F.3d 1271, 1272 (10th Cir. 2009); United States v. Byrum, 567 F.3d 1255, 1257 (10th Cir. 2009). If the government's position were correct, no defendant who enters into a Rule 11(c)(1)(C) plea agreement that is accepted by the district court could seek review of the subsequent denial of a motion to withdraw that plea.

*The denial of Menera's motion to withdraw his plea*

We review the district court's denial of a motion to withdraw a guilty plea for an abuse of discretion. Byrum, 567 F.3d at 1264. "When a defendant moves to withdraw a guilty plea—after its acceptance by the district court but prior to sentencing—the court must assess whether there is a 'fair and just reason for withdrawal.'" Id. (quoting Fed. R.

Crim. P. 11(d)(2)(B)).  In making this assessment, a court must consider the following

factors:

> (1) whether the defendant has asserted his innocence;
> (2) whether withdrawal would prejudice the government;
> (3) whether the defendant delayed in filing his motion, and if so, the reason
> for the delay;
> (4) whether withdrawal would substantially inconvenience the court;
> (5) whether close assistance of counsel was available to the defendant;
> (6) whether the plea was knowing and voluntary; and
> (7) whether the withdrawal would waste judicial resources.

Id. (quoting United States v. Yazzie, 407 F.3d 1139, 1142 (10th Cir. 2005)).

In analyzing these factors, the district court found that Menera "ha[d] not asserted

his innocence in the unequivocal way that the factors for this withdrawal of plea

contemplates."  ROA, Vol. 2 at 34.  The district court acknowledged that Menera had

filed a motion to suppress evidence prior to entering into the written plea agreement, but

it concluded that this was "not even a legal assertion of innocence, unless of course it

would suppress all evidence."  Id.  With regard to whether Menera had close assistance of

counsel in connection with his plea, the district court recounted the details of the

proceedings that preceded Menera entering into the plea agreement, and it noted that

Menera and his counsel were given ample time to meet and discuss the government's plea

offer.  As regards the question of whether Menera's plea was knowing and voluntary, the

district court noted it had previously found that Menera's plea was knowing and

voluntary, and it concluded that the allegations in Menera's motion to withdraw his plea

"d[id] not change [its] conclusion that the plea was knowingly and voluntarily made for a

number of reasons." Id. at 32. The district court explained:

> First, Mr. Menera knew that he was pleading to 100 months if the Court
> accepted the plea agreement. He was made aware of the maximum plea
> that he-- or the maximum sentence that he was facing, which was
> substantially more than that. And the fact that he was aware that there were
> plea negotiations going on at the same time with the co-defendant and that
> the co-defendant had received a similar or even identical plea offer that at
> that point in the proceeding had been represented to be the best offer to that
> defendant is not a promise that was made to Mr. Menera. It's not a promise
> that forms the-- part of the agreement between he and the government.
>
> That's not to say it didn't perhaps influence his decision-making, but the
> government did not promise and did not commit to entering into an
> agreement with Mr. Cano to a 100-month binding plea agreement. And, in
> fact, the government never did enter into such an agreement. Mr. Cano
> rejected that agreement. The government later apparently entered into
> another-- well, it didn't enter into an agreement. They made another offer
> to Mr. Cano that was for 85 months binding, Mr. Cano rejected that plea
> offer.
>
> But the important thing is that the government's agreement with this
> defendant was not based on a promise that Mr. Cano would receive the
> same sentence or would receive a-- a plea offer no better than his for all
> time. And the government really couldn't be in a position to enter into a
> plea agreement that included that offer, because every defendant has to
> make their own decision about whether to accept the plea offers or not,
> whether to counteroffer, whether to go to trial. The government's
> negotiating stance does change, it does evolve.
>
> It's probably a good practice that if the government tells the defendant:
> This is your best plea offer and nobody else is going to get a plea offer any
> better than this among your co-defendants, it's probably a good practice to
> stand by that. But events do evolve and change. Witnesses sometimes
> change their testimony, witnesses sometimes disappear or die. Evidence
> becomes stronger as it goes to trial, evidence sometimes becomes weaker as
> it goes to trial. The same can be said every step along the way. Even in the
> context of a suppression hearing, sometimes the evidence may play out in a
> way that changes the government's view of how to go forward with that
> particular defendant or some other co-defendant.

So the fact that the government may have told Mr. Menera that at that particular time that was its negotiating stance with Mr. Cano in this Court's view was not a promise, not something that was material to this plea agreement, not in the plea agreement with Mr. Menera, and in no way detracted from the fact that he knowingly and voluntarily entered into a plea agreement with respect to himself.

Id. at 32–34.

The district court also found that

[t]here would be prejudice to the government, both in terms of having to start back at the suppression hearing stage with this defendant, but also prejudice to the government in the sense that if the Court were to adopt Mr. Menera's position, a defendant could– could successfully withdraw his plea anytime there were a change of circumstances as he understood them to be with respect to his co-defendants.

Id. at 35.

Ultimately, the district court concluded that "in view of all of the factors, . . . this plea should not be withdrawn and that this defendant has not shown a fair and just reason for requesting the withdrawal." Id. at 34–35.

Menera argues that the district court abused its discretion by "bas[ing] its decision on a mischaracterization of the government's promise not to give Cano-Bahena a better plea offer than the one Menera[] accepted." Aplt. Br. at 16. Specifically, Menera argues that the district court "improperly converted the government's unconditional promise into a conditional one." Id. In support, Menera notes that "[g]overnment counsel admitted in a filed pleading that he 'told defendant's counsel the co-defendant would not get a plea offer of less than 100 months.'" Id. (quoting ROA, Vol. 1 at 86). Menera in turn notes that government "[c]ounsel did *not* claim that his promise was conditioned on future

events, whether 'trial preparation factors' or anything else." Id. (emphasis in original). "Nor," Menera asserts, "did [government counsel] allege any ground on which he was prevented from keeping his promise." Id. "Rather," Menera asserts, government counsel "simply said that while he intended to keep his word at the time the promise was made, he later changed his mind." Id.

In support of his position, Menera cites to the Supreme Court's decision in Santobello v. New York, 404 U.S. 257 (1971). In Santobello, the Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262. If the government breaches a promise that induced the defendant to plead guilty, the appropriate remedy is either specific performance of the agreement or an opportunity to withdraw the plea. Id. at 263.

The critical problem for Menera, however, is that the representations that were made to him by the prosecutor regarding the plea deal that would be offered to Cano-Bahena were not incorporated into the parties' written plea agreement. Under the express terms of the written agreement, the government agreed to the proposed 100-month sentence and also agreed "to not file any additional charges against the Defendant arising out of the facts forming the basis for the Indictment." ROA, Vol. 1 at 35. No mention was made, however, of Cano-Bahena or the plea deal that the government would or would not offer him. Finally, and most importantly, Paragraph 15 of the written plea agreement stated:

15. **No Other Agreements**.    The defendant has had sufficient time to discuss this case, the evidence, and this agreement with the Defendant's attorney and Defendant is fully satisfied with the advice and representation provided by Defendant's counsel.  Further, the Defendant acknowledges that he has had the plea agreement read to him, understands it and agrees it is true and accurate and not the result of any threats, duress or coercion.  The Defendant further understands that this plea agreement supersedes any and all other agreements or negotiations between the parties, and that this agreement embodies each and every term of the agreement between the parties.  The Defendant acknowledges that the Defendant is entering into this agreement and is pleading guilty because the Defendant is guilty and is doing so freely and voluntarily.

Id. at 39.

Thus, we conclude that the record amply supports the district court's finding that the government, in entering into the written plea agreement with Menera, "did not promise and did not commit to entering into an agreement with [co-defendant] Cano to a 100-month binding plea agreement." ROA, Vol. 2 at 32.  In other words, we conclude that, had the government's representations regarding Cano-Bahena been central to Menera's decision to plead guilty, those representations would have been set forth in the written plea agreement.  Absent such terms in the written plea agreement, there is no basis for concluding that the prosecutor knew that his representations regarding Cano-Bahena were central to Menera's decision to plead guilty.

We in turn conclude that the record, in particular the written plea agreement, also supports the district court's finding that Menera's plea was knowing and voluntary.  The written plea agreement outlines the full consequences of Menera's plea, and the record indicates that both the government and the district court adhered to the terms of the

-11-

written plea agreement.  Further, Menera concedes that he was asked by the district court at the time he entered his plea if the written agreement embodied the entire agreement of the parties and that he said yes.  Aplt. Br. at 19.

For these reasons, we conclude that the district court did not abuse its discretion in denying Menera's motion to withdraw his guilty plea.

### III

The government's motion to dismiss is DENIED.  The judgment of the district court is AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge