NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (4th) 251142-U

NO. 4-25-1142

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 24, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Ford County |
| WILLIAM W. LINDSAY, | ) | No. 22CF83 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Matthew J. Fitton, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Knecht and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held*: The appellate court vacated an order denying defendant's postplea motion and remanded the cause to the trial court with directions to give defendant the opportunity to plead guilty to count II of the information rather than count I, in exchange for a sentence of probation.

¶ 2   Defendant, William W. Lindsay, appeals an order denying his motion for leave to withdraw his guilty plea to the offense of unlawful possession with intent to deliver methamphetamine (720 ILCS 646/55(a)(1) (West 2022)), with an agreed 15-year prison sentence. One of the issues defendant raises is that his counsel was ineffective for failing to argue that he had a due process right to obtain the benefit of the bargain attendant to the plea. Specifically, defendant asserts that he did all that was required of him under the terms of his plea agreement to be allowed the opportunity to plead guilty to a lesser offense (unlawful possession of methamphetamine (720 ILCS 646/60(a) (West 2022))) and receive a sentence of probation.

¶ 3    The State confesses error before this court, and the parties have filed an agreed motion requesting a summary disposition of this appeal. We accept the State's confession of error, grant the parties' agreed motion, vacate the order denying defendant's postplea motion, and remand the cause with directions specified herein.

¶ 4                                I. BACKGROUND

¶ 5    On July 25, 2022, the State charged defendant by information with (1) unlawful possession with intent to deliver methamphetamine, a Class X felony (720 ILCS 646/55(a)(1) (West 2022)) (count I), and (2) unlawful possession of methamphetamine, a Class 1 felony (720 ILCS 646/60(a) (West 2022)) (count II).

¶ 6    On October 17, 2022, the parties presented the trial court with a fully negotiated plea agreement. The prosecutor advised the court that the parties agreed to the following terms. Defendant would plead guilty to count I and be sentenced to 15 years in prison, to be served at 75%, followed by a term of mandatory supervised release. The State would dismiss count II. Defendant would receive 88 days of credit against his prison sentence and would report for incarceration on November 15, 2022. However, in advance of his reporting date, defendant would work with court services to "secure a bed," as he would "be participating in a year-long rehabilitation program." During that term of treatment, the parties would review the case periodically. According to the prosecutor, "as long as [defendant] successfully completes the rehabilitation program in approximately a year's time," the prosecutor "anticipate[d] coming back on a motion to reconsider sentence that [defense counsel] is going to file within the next 30 days."

¶ 7    The prosecutor continued:

"And if [defendant] is successful with his rehabilitation program[,] it's anticipated that the Class X felony will be dismissed and [defendant] will re-enter

a plea on the Class 1 that's being dismissed today and be placed on the maximum term of probation under the usual and ordinary terms in Ford County.

So at this point [defendant] has an opportunity to put this matter behind him without incarceration in the department of corrections.

It's anticipated he will remain incarcerated in the Ford County jail until such time as the treatment facility is ready to take him. We anticipate that being one to two weeks from today's date."

¶ 8        The trial court then questioned defendant, ensuring that this was the agreement as he understood it and that he entered the agreement knowingly and voluntarily. The court went over the terms of the agreement with defendant, including that he "could be back here on the Class X felony[,] which is non-probationable," if he were not "successful in the terms of this agreement." The court told defendant that success would mean him undergoing "the substance evaluation, rehabilitation, [and] follow[ing] the terms of this agreement." After the prosecutor presented a factual basis for the plea, the record shows the court accepted the parties' agreement.

¶ 9        As contemplated by the terms of the plea agreement, on October 19, 2022, defendant filed *pro forma* motions to withdraw his guilty plea and to reconsider the sentence. Defendant did not immediately request hearings on those motions, as they were plainly meant to be placeholders so that the trial court retained jurisdiction of the cause while defendant underwent treatment. On October 31, 2022, the court entered an order directing defendant to be released to Ford County probation and court services the next day for transportation to receive inpatient treatment.

¶ 10        A docket entry from February 9, 2023, indicates that the trial court set the matter for review on July 11, 2023. Defendant's attorney was not present in court on July 11, 2023, so

the court continued the review to August 21, 2023. Defendant's attorney was again not available on August 21, 2023, so the court continued the review to November 6, 2023.

¶ 11    On November 6, 2023, the prosecutor informed the trial court that defendant, "since being released from long-term treatment, has tested positive for Court Services and then stopped responding to direction from them to be tested." The prosecutor added that defendant was "right back into the behavior which led to this case being filed in the first place." Thus, the prosecutor took the position that defendant had not "successfully completed the treatment," which meant the court should impose the 15-year prison sentence on count I under the terms of the plea agreement.

¶ 12    Defendant's counsel responded that she had not heard this information before and suggested taking the matter up the next day. The prosecutor noted that defendant was "being [drug] tested as we sit here," and he proposed that defendant should be jailed overnight as a bond violation if he tested positive. Defense counsel conceded that if defendant tested positive, it would be appropriate to hold him in jail overnight. The prosecutor represented to the trial court that defendant had tested positive for drugs on unspecified prior occasions. The court ordered defendant to be incarcerated until the matter could be taken up the next day.

¶ 13    On November 7, 2023, the prosecutor informed the trial court that defendant tested positive for methamphetamine the day prior and had "prior positive tests" and "multiple failures to report to probation as directed" on unspecified dates. Accordingly, the prosecutor requested that defendant be ordered to begin serving his 15-year prison sentence *instanter*. Defendant's counsel acquiesced to the prosecutor's request, as she conceded defendant was "not clean at this time and did not successfully complete the terms of that agreement." The court ordered defendant to begin serving his 15-year prison sentence on count I.

¶ 14    No further action was taken in connection with the case until June 20, 2024, when

the trial court scheduled a hearing on the motion to withdraw the guilty plea that defendant had filed on October 19, 2022. (Defendant subsequently withdrew his motion to reconsider his sentence.) The court continued that hearing twice because prison staff did not transport defendant to the proceeding.

¶ 15　　　　The trial court ultimately held the hearing on defendant's postplea motion on December 17, 2024. Defendant's counsel asserted that defendant completed the treatment program, as required by the plea agreement. However, counsel also acknowledged that when defendant returned to Ford County after obtaining that treatment, he experienced some failures with pretrial services. Counsel *did not* argue that defendant's completion of inpatient treatment meant that he had a due process right to obtain the benefit of his bargain under the plea agreement. Rather, counsel framed her argument as a challenge to the voluntariness of defendant's plea, given that he was confused as to what was required of him. Counsel requested for defendant to be allowed to withdraw from the plea agreement and for the court to reinstate both counts, thus "starting from ground zero."

¶ 16　　　　The prosecutor responded that the trial court's admonitions on October 17, 2022, sufficiently apprised defendant "as to his plea, as to the consequences of his plea, as to the participation in the rehabilitation program and his expectations." The prosecutor maintained that the State lived up to its end of the bargain under the plea agreement, but defendant did not, stating:

> "The State offered [defendant] an opportunity to avoid prison by completing treatment and demonstrating that he was clean and sober. The defendant did complete treatment, State conceded that, however, he tested positive for methamphetamine shortly after returning to the community. That is not an indication of the treatment taking hold over his—abiding by the terms and

- 5 -

conditions.

We've argued before and we would argue here again that we had a contract, and if he successfully completed treatment and remained clean, he would initially not do a day in the Illinois Department of Corrections. This was an outside-the-box sentence. The State has done a handful of cases here in Ford County. We believed [defendant] to be a good candidate for that, and obviously, with it being an outside-the-box type of sentence, I believe the terms and conditions were appropriately and adequately relayed to him.

Again, *** the Court admonitions were sufficient to show that this was a voluntary and knowing admission of guilt and acceptance of the negotiated disposition."

Accordingly, the prosecutor asked the court to deny defendant's motion to withdraw his guilty plea.

¶ 17    In rebuttal argument, defendant's counsel identified the relevant issue as whether defendant "fulfill[ed] his obligations" under the plea agreement. Counsel again mentioned that defendant "finished the program" but acknowledged that he "violated in other ways" before the parties could come back to court to "do the motions" contemplated by the plea agreement. Counsel reiterated that she was "not saying that he didn't violate" in the ways the State alleged. However, she proposed that if the parties had been able to get the matter before the trial court sooner, defendant probably would have been placed on probation by the time he committed the violations. Counsel asserted that defendant's understanding of the plea agreement was that he was required to "complete the rehab program," which he did when he "was successfully dismissed from that."

¶ 18    The prosecutor then reiterated his position that defendant did not live up to his end

of the bargain under the plea agreement to avoid a prison sentence, stating:

> "Judge, I guess the idea that I'm going to go away for close to a year, come back and use meth within a relatively short period of time of being back in the community does not demonstrate a successful completion of the program. It does not demonstrate that he learned anything, that he developed tools necessary to prevent himself from relapsing, so I don't believe—I think a successful completion goes beyond the certificate. It goes to demonstration of living a clean sober life, and we believe that the Court correctly found the violation was sufficient to trigger the mittimus that had been stayed."

¶ 19   The trial court denied defendant's motion to withdraw his guilty plea. The court reasoned that defendant understood the "expectations of what he was supposed to finish" as part of this "outside the box disposition or sentence." The court acknowledged that defendant completed the rehabilitation program. However, the court believed that part of the agreement "was to get back into court" and defendant relapsed on methamphetamine before doing so. The court continued: "And as [the prosecutor] stated, does that show he successfully completing [*sic*] the program when there's going back to old ways and use rather quickly[?] It wasn't the terms and conditions of the agreement of the plea." In the court's view, defendant "was to remain complete [*sic*] and comply with terms and conditions of the agreement, including with Court Services, following the rehab program until he got back into court." Defendant failed to do so and thus "didn't finish all the terms and conditions," despite being "aware of the circumstances and the conditions and what was expected of him."

¶ 20   At defense counsel's request, the trial court directed the clerk of the circuit court to file a notice of appeal for defendant. The clerk did not do so until 10 months later. Nevertheless,

on defendant's petition, our supreme court entered a supervisory order directing us to allow him to file a late notice of appeal, which he did.

¶ 21                                    II. ANALYSIS

¶ 22        On appeal, one of the issues defendant raises is that his counsel was ineffective for failing to argue that he had a due process right to obtain the benefit of the bargain attendant to the plea. Defendant reasons that he completed inpatient rehabilitation treatment, which was the only condition required of him under the terms of the plea agreement to allow him to plead guilty to the offense charged in count II of the information in lieu of count I and receive a sentence of probation. The State filed a confession of error on this issue. The parties also filed an "Agreed Motion for Summary Disposition" proposing that specific enforcement of the plea agreement is the proper remedy. We accept the State's confession of error and grant the parties' "Agreed Motion for Summary Disposition."

¶ 23        " '[W]hen a defendant enters a negotiated plea of guilty in exchange for specified benefits *** both the State and the defendant must be bound by the terms of the agreement.' " (Emphasis omitted.) *People v. McDermott*, 2014 IL App (4th) 120655, ¶ 28 (quoting *People v. Whitfield*, 217 Ill. 2d 177, 190 (2005)). Indeed, it would be "fundamentally unfair to allow the prosecution to renege on a deal with a defendant when the defendant has relied on the agreement to his detriment." *People v. Smollett*, 2024 IL 130431, ¶ 56; see *Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."). Thus, a defendant who pleaded guilty in reliance on a plea agreement and then " 'did not receive the benefit of the bargain he made with the State' " may have a due process right to enforce the agreement. *McDermott*, 2014 IL App (4th) 120655, ¶ 26 (quoting *Whitfield*, 217 Ill.

2d at 183).

¶ 24　　　　Here, the trial court accepted an unorthodox fully negotiated plea agreement on October 17, 2022, that was meant to incentivize defendant to obtain substance abuse treatment to avoid a lengthy term of imprisonment. Defendant pleaded guilty to the Class X offense alleged in count I of the information in exchange for a 15-year prison sentence, and the State dismissed the Class 1 offense alleged in count II. However, enforcement of the prison sentence was held in abeyance pending defendant's participation in an inpatient rehabilitation program. As the prosecutor detailed the parties' understanding during the plea hearing, if defendant "successfully complete[d] the rehabilitation program in approximately a year's time," the parties anticipated returning to court on a placeholder postplea motion that defendant would file shortly after the plea hearing. The prosecutor further explained at the plea hearing that

> "if [defendant] is successful with his rehabilitation program[,] it's anticipated that the Class X felony will be dismissed and [defendant] will re-enter a plea on the Class 1 that's being dismissed today and be placed on the maximum term of probation under the usual and ordinary terms in Ford County."

¶ 25　　　　Essentially, the plea agreement the prosecutor described gave defendant the option to return to court to have count I of the information dismissed, so long as he pleaded guilty to count II in exchange for a maximum probation sentence. Again, the only specified condition defendant had to meet before he had the right to exercise this option was to be "successful with his rehabilitation program," which the prosecutor defined as "successfully complet[ing] the rehabilitation program in approximately a year's time." Defendant confirmed on the record that his understanding of the agreement was in accord with how the prosecutor described it. The trial court accepted the parties' agreement.

¶ 26    The record shows that defendant completed his treatment program and was discharged. It is also undisputed that he tested positive for drugs thereafter while residing in the community and reporting to pretrial services. At the hearing on defendant's postplea motion, the prosecutor argued, and the trial court found, that defendant's right to receive a sentence of probation under the terms of the plea agreement was contingent on him maintaining sobriety after completing the treatment program. However, that was never specified as a condition of the plea when the court accepted the parties' agreement on October 17, 2022. Although defendant's relapse after completing treatment certainly was not what anyone would have hoped for, he was entitled to the benefit of his plea bargain.

¶ 27    Defendant never argued in the proceedings below that he was entitled to the benefit of his bargain. Rather, on November 7, 2023, defendant's counsel *conceded* that defendant had not successfully completed his obligations under the plea agreement and should be sent to prison immediately, without any further hearing on the issue. When the matter eventually returned before the trial court for a hearing on defendant's postplea motion in December 2024, defendant's counsel again did not raise the argument that defendant should receive the benefit of his bargain. Defendant was entitled to effective assistance of counsel, which would have included raising the meritorious claim that defendant had the right to enforce an option under his plea agreement that would allow him to plead guilty to a lesser charge and be sentenced to probation rather than 15 years in prison. See *People v. Talavera*, 2021 IL App (4th) 190200, ¶¶ 19-20 (determining that an attorney was ineffective for failing to object when the State reneged on a promise pertaining to the sentence it would recommend).

¶ 28    When a defendant is deprived of the benefit of a plea bargain, the possible remedies are either to order the State's promise to be fulfilled (specific performance of the parties'

agreement) or to give the defendant the opportunity to withdraw the plea (sending the proceedings back to square one, as if no plea had been entered). See *McDermott*, 2014 IL App (4th) 120655, ¶ 31. Here, the parties agree that the former option is appropriate. We concur with that assessment. Defendant completed the only condition required under the plea agreement to trigger his option to plead guilty to count II rather than count I, in exchange for a maximum probation sentence. Getting the benefit of the bargain means that defendant should have the opportunity to exercise this option rather than starting all proceedings anew.

¶ 29                                    III. CONCLUSION

¶ 30         Accordingly, we vacate the order denying defendant's postplea motion. We remand this cause to the trial court with the following directions. Defendant shall have the opportunity to plead guilty to count II of the information and have count I dismissed. Provided defendant exercises this option, in accordance with the prosecutor's summary of the parties' agreement during the October 17, 2022, plea hearing and in the "Agreed Motion for Summary Disposition," the court shall resentence defendant to "the maximum term of probation under the usual and ordinary terms in Ford County." If defendant elects not to exercise his option under the plea agreement, his conviction and sentence on count I shall remain in force. Our mandate shall issue *instanter*.

¶ 31         Vacated and remanded with directions.